## HAIR, ET AL. V. LA BROUSE.

1. When parties enter into a contract, and reduce its stipulations to writing, the written memorial of the contract, is the sole expositor of its terms and cannot be varied by parol evidence, unless it be clearly made to appear, that by mistake, it does not speak the intent of the parties, or unless the party has been induced to enter into it by the fraudulent representations of the other.

2. All previous parol stipulations, are merged in the written contract, and when a party seeks to avoid his contract, by proof of representations, or declarations previously made, it devolves on him to establish, that the written contract was entered into by mistake, or procured by fraud.

3. *Quere?* is it admissible in any case, to vary the terms of the contract, as *to the medium of payment*, by proof of previous declarations, unconnected with fraud, or mistake, in the *execution* of the written contract.

Error to the Chancery Court of Greene.

THE bill which was filed by the defendant in error, states, that about the 1st February, 1840, the plaintiffs in error, as trustees in a deed made by Willard Freeman for the benefit of the Tombigbee Rail Road Co., offered for sale at Jones' Bluff, certain lots which were bought by complainant, for $2,176, for which complainant executed his two notes for $1,088 each, due twelve and twenty-four months from the date, payable to the trustees, with surety, and at the same time executed a deed of trust to secure the payment of the money to J. Bliss, as trustee. That it was known and understood, at

the sale that it was made for the benefit of the Tombigbee Rail Road Company.

That at the time of the sale, before it was commeneed, and during its progress, the auctioneer, at the special request and order of the trustees, and in their presence, proclaimed to the by-standers, that in the sale of the lot above described, they would take in payment for the notes given for the purchase money, the bank notes of the Tombigbee rail road company, if the same were punctually paid, and the auctioneer then, in their presence, urged the by-standers to purchase, upon the ground that they could then obtain property with spurious money. That this statement was repeatedly made in their presence, and by their order. That the rail road notes were then at a discount of fifty per cent. below Alabama bank notes, were in a gradual state of depreciation, and are now not worth more than ten cents in the dollar. That he was induced to purchase, because of this proclamation, and would not otherwise have done so.

Pursuant to said contract he procured the notes of the rail road company, and on the day before the first note fell due, tendered the full amount to Bliss, who then held the note, but he refused to receive it and deliver up the note.

That suit has been brought on the note for the use of F. G. Gibson, and a sale advertised upon the trust deed executed by the complainant for the payment of the notes, and it is alledged that Gibson has no interest, but the suit is in his name for fraudulent purposes. That in executing the notes, he confided in the promise made at the sale, that the notes of the rail road would be received in payment, &c. An injunction was prayed and granted, to the further prosecution of the suit at law, and to the sale under the deed.

The defendants all deny the fraudulent representations alledged to have been made. Hair, who was present at the sale, says, the terms of the sale were posted up in a conspicuous place. Denies giving any order, or directions to the auctioneer to proclaim the terms of the sale, or that he did in fact proclaim, that spurious money would be received in payment. That the printed terms were for cash, and that he told the crowd, and made proclamation, that there was a probability that the notes of the rail road company would be

received in payment, but distinctly stated, that the sale was for cash. That the auctioneer, without authority or request from any one, stated the same in substance.

Asserts positively, that the complainant, before the sale, inquired of him if the notes of the rail road company would be received, and that he informed him they would not, and the sale was for cash, and such were the terms of the sale as posted up. That the notes were not given until some weeks after the sale, and not a word was said about a payment in any thing but money.

Bliss states that the company has no interest in the notes; that before the sale it transferred a large debt due to it, from Willard, Freeman & Co. to Gibson, who was a creditor of the company, and that it was to pay the debt to Gibson, that the sale was made. Admits the tender, &c.

A large mass of testimony was taken, which is referred to in the opinion of the court.

The chancellor, considering that the fraudulent representations at the sale were proved, made the injunction perpetual.

HAIR and BALDWIN, for plaintiffs in error.

MURPHY, contra.

1. Parol evidence of that which passed before, and at the execution of a contract is admissible in case of fraud. [Boyce's Ex'rs v. Grundy, 3 Peters' Rep. 210, 219 ; Christ v. Diffenbach and others, 1 Sergt. & Rawle, 464; Paysant v. Ware & Barringer, et al. 1 Ala. Rep. (N. S.) 161; also Beard v. White, Ib. 434; Land v. Jeffries, 5 Randolph, 211.]

2. A promissory note obtained by fraud will be relieved against in equity.

3. If a party innocently and by mistake misrepresent a material fact, upon which another party is induced to act, it is as conclusive a ground in a court of equity for relief as a wilful and false assertion. [Lewis v. McLemore, 10 Yerger, 206 ; 1 Wheeler's Am. Ch. Dig. title Fraud, 461 ; Harding v. Randall, 15 Maine Rep. 332 ; 1 Story's Eq. 202, and cases cited in notes.]

4. As to the verbal declarations of the actioneer not being admissible to contradict the written conditions of sale, the gen-

Hair, et al. v. La Brouse.

eral rule is admitted, but the exceptions to that rule are *fraud*, mistake, or surpise, [1 Livermore on Agency, 330,] and that parol evidence may be admitted.  He cited 6 Vesey, jr., 1 Vesey & Beame, 524; 14 Vesey, jr. 519.]

5. Parol evidence is admissible to prove a note payable in specie, was to be made payable in Tombigbee rail road money. [Wilson's adm'r v. Bowen, 4 J. J. Marsh. 122.]

6. Hair's deposition should be suppressed; a decree can be made against him upon the subject to which he is examined ; the notes prayed to be enjoined are made payable to Hair and Labuzan.  [Dixon v. Parker, 2 Vesey, sen. 219.] See particularly, 1 Barbour's Ch. Prac. 260, in which the case from 2 Cowen relied on by the plaintiff in error is reviewed.

7. The deposition of Bliss will be excluded upon the same ground, and the additional ground that the facts deposed are illegal and improper.

8. As to Gibson's innocence—a deed procured by fraud or undue influence is void, and will be set aside, not only as against the one who practised the fraud, or exerted the influence, but as to third persons who have acquired interests under it, though they may be perfectly innocent. [Whelan v. Whelan, 3 Cowen's Rep. 538; Glover v. Smith, 1 Des. 433.]

9. Equity will set aside a conveyance obtained by misrepresentation, although the party imposed on was of sound understanding, *and had time to detect the falsehood* before he made the contract.  [McAllister, et al. v. Barry, et al. 2 Haywood's Rep. 290.]

ORMOND, J.—We are strongly inclined to think, if indeed we might not say entirely satisfied, that upon the merits, this case is with the plaintiff in error, upon the proof, and the necessary inferences and presumptions arising from the admitted facts of the case.

Here was a large sale of real and personal property, at which a considerable crowd of persons were assembled to purchase.  The terms of the sale were posted up in a conspicuous place, from which it appeard that all purchases under $5 were to be paid in cash, and a credit on sales above that amount.  Nothing was said as to the kind of money

which would be received in payment, but it is difficult to believe, that if the trustees conducting the sale, were willing to receive in payment the notes of a broken institution, then fifty per cent. below *par*, and constantly depreciating, such a fact would not have had a conspicuous place in the terms of the sale. Such an important fact as that, would not have been sedulously kept out of view, or wrapt in the mystery of an ambiguous phrase. Further, the natural and customary mode is, to publish the terms at the commencement of the sale; but the declarations imputed to Hair, are not alledged or proved to have been made at the commencement of the sale, but during its progress. So the auctioneer, in his deposition says, Hair gave me no instructions at the commencement of the sale, obviously because the persons present were presumed to have read the terms as posted up.

The only explication of these facts, as connected with the relief sought, is, that the trustees meditated a fraud, and intended to hold out inducements to the persons present to buy, which the written terms of the sale did not justify, and this is the effect of the allegations of the bill.

We shall not consider the propriety of the rejection, by the chancellor, of the testimony of Hair and Bliss, because, independent of their evidence, the result of all the testimony supports the answers. Although there is some diversity between the witnesses of the respective parties, there is not a greater discrepancy than is usually found in such cases.

The auctioneer certainly knew what he was authorized to say, and what he did in fact say. He says, that Hair did not request or authorize him to make any statement, but whilst the sale was progressing, stopped him, called the attention of the persons present, and remarked to them, "that he had no doubt but that Tombigby rail road money would be taken in payment for property then selling, if presented in time, as it was selling to pay a debt due the Tombigbee bank." Hair then told him to proceed with the sale. He adds, I then proclaimed, that Tombigbee money would be taken, and now was the time to get bargains, &c. Now in all this, it would seem, no one should have been deceived. The auctioneer did not intend the commission of a fraud, nor is it so charged, or that he had combined with the trustees for that purpose.

He was in the practice of his vocation, exaggerating the value of the article he was selling, and as is too common with them, substituting probability for certainty. It was his commentary on Hair's declaration, of the correctness of which every one was competent to judge. Nor was there any necessity that Hair should expose its fallacy, as he was justified in supposing that every one present would put the proper estimate upon it. That Hair was acting in good faith in making this suggestion of the probability of the rail road notes being received, is shown by the testimony of May, who proves that Hair, previous to the sale, desired to obtain the consent of Bliss, to take the notes payable in that kind of money; that Bliss refused, but intimated a probability of their being received.

Among the great number of witnesses examined, as might have been expected, when witnesses undertake to detail declarations of others, a considerable discrepancy is found. Seven swear positively, that Hair agreed unequivocally, to receive in payment the rail road notes, whilst five others say that he made no positive promise, but stated it as probable, and added that he should require notes for specie, or good money. It is worthy of remark, that three of these were purchasers of property at the sale, who executed their notes for money, and have paid, or expect to pay them in sound funds. Others heard no declaration made by Hair, and some speak of the general understanding of the crowd. Upon the entire testimony, conceding that all the witnesses are equally entitled to credit, we think the complainant has failed to establish the case made by the bill. There are two considerations growing out of the facts, strongly corroborative of this view.

It is evident that Hair designed to enhance the price of the property by the statement which he made, and there can be as little doubt, that with sanguine persons it had that effect. But if he had made a positive agreement to receive the rail road paper, its effect on the sale would have been unequivocal. Yet we find the witnesses differing about its effect; some estimating it at fifty per cent., some at twenty-five per cent., some merely saying it had the effect of enhancing the

70

price, and others that it had no effect at all. If such a promise had been made, there could be no difference of opinion about its effect on the sale, but the probability only of the depreciated currency being taken in payment, would operate upon different persons unequally, according to their temperament, as it appears to have done.

The other consideration is the execution of the notes in the usual mode, with a deed of trust to secure their prompt payment, some time after the sale, without objection, or explanation, that they were not to be paid in money, though on their face they called for it. This is a proceeding so unusual in the ordinary transactions of mankind, that it requires to be explained. The least that can be said of it is, that it strongly fortifies the proof of the plaintiff in error.

Passing from this to the law of the case, we think it equally conclusive against the relief sought. Where parties enter into a contract, and reduce its stipulations to writing, the written memorial of the contract, is the sole expositor of its terms, which cannot be varied by parol testimony, unless it be clearly made to appear, that by mistake, it does not speak the true intent of the parties, or unless the party has been induced to enter into it, by the fraudulent representations of the other. Paysant v. Ware & Barringer, 1 Ala. 164, where this question was fully discussed; and the authorities cited at length.

It is not pretended that there was any mistake in the execution of the notes for the purchase money, or in the deed of trust securing its payment, and the only ground insisted on, is, that the contract is tainted with fraud, because, as alledged, Hair, the trustee, and the auctioneer in his presence, and hearing, proclaimed at the sale of the property, that the notes of the Tombigbee rail road company, would be received in payment. Why was not this promise inserted in the written contract, which the parties some weeks afterwards executed, as the evidence of its stipulations?

The bill is very full in charging the fraudulent representations at the sale, and that they were the inducements to the purchase, but there is no satisfactory explanation given, of the motives, or inducements, which led to the execution of

the written contract, varying as it does in such a vital partic-
ular from the alledged representations at the sale.   The lan-
guage of the bill, on this point is, " your orator further states,
that he was induced to purchase the said lands, and give the
said notes, because of the agreement, that the same should be
paid out of the bank notes of the Tombigbee rail road compa-
ny, and that without that proclamation by said Hair, and
Labuzan, by their agent, the said Robert Prince, and in their
presence, your orator would not have purchased said land.
That in bidding for the same, and in giving his notes he esti-
mated in his bargain the depreciated value of the rail road
money."

Now it is most apparent, there is no fraud charged in the
consummation of this contract.   The well established rule
is, that all previous parol stipulations, are merged in the writ-
ten contract ; the exceptions to the rule is, where the contract
has been entered into by surprise, or mistake, or has been
obtained by fraud.   Where the fraud consists in the false re-
presentation of the value, quantity, quality, or title, of the
property sold, if it be such a case, that the vendee may safe-
ly rely on the representations of the vendor, for information,
he may be excused for not insisting on their insertion in the
written evidence of the contract; because the contract is full
and complete without such insertion.   Such was the case of
Boyce v. Grundy, 3 Peters, 219, where the contract was a-
voided because of the want of title, and of false representa-
tion in regard to the overflow of the land, by the Mississippi
river.   The court say, " there is no attempt to vary the writ-
ten agreement; the relief is sought upon the ground, that by
false suggestions, and immoral concealment, the party seek-
ing relief, was entrapped into an agreement, in which he
would not otherwise have involved himself.   This is not de-
nying that the agreement in the record was the agreement
entered into, but insisting that it was vitiated by fraud," &c.

But where, as in this case, the representations relied on to
avoid the contract, do not relate to the article sold, but to the
medium of payment, a plain and direct offer is made, to vary
the terms of the written contract by parol evidence. ` It may
perhaps well be doubted, whether this can be done in any pos-
sible state of the case, but certainly it should at least appear,

that when the contract was consummated, by being reduced to writing, some promise, or inducement was held out, that it should not be literally enforced, according to its terms, but according to an understanding then entered into, different from it. Such was the case of Christ v. Diffenbach, 1 S. & R. 464, relied on by the counsel for defendant in error, where however, the false representation was as to the subject of the contract, and not the medium of payment. To the same effect is Smith v. Williams, 1 Murphy, 126 ; Mead v. Steager, 5 Port. 504, and Paysant v. Ware & Barringer, 1 Ala. R. 166. In the last case, a stock of goods, accounts, &c. had been sold, and in the written agreement it appeared, that all accounts that were doubtful were excepted out of the sale. The vendee offered to prove by parol, that he purchased all the accounts—this court held, the mere omission to insert this in the contract, was not evidence of a fraud, though the agreement was reduced to writing by the vendor.

The utmost effect which can be ascribed to the allegations of the bill is, that when the party executed the notes, and trust deed, he expected to be permitted to discharge the notes in the rail road company paper, in consequence of the representations made at the sale. There was nothing done, or said, by the plaintiffs in error at the time, to warrant such an expectation, or belief, and any promises, or declarations, they might have previously made, must be understood as merged in the contract, when reduced to writing and signed. To permit him now to overturn a solemn promise for the payment of money, by proof of a previous promise to receive payment in worthless paper, would be to destroy the rule of evidence, that a written promise cannot be varied by parol—it would in its consequences, put an end to the sanctity of all written contracts.

This rule may possibly operate harshly in particular cases, but that its general results are most beneficial cannot be doubted. Its wisdom is shown in this particular case. It is not asserted that any inducement was held out to the defendant in error, which were not offered to all others in attendance at the sale, and yet we find, that several of those who purchased at the sale, understood that they were to execute their notes for the payment of money, and that it was a mere

possible contingency, that any thing else but money would be received in payment—that if specie was exacted, they were bound to pay it. In this conflict of testimony, the rule affords a safe criterion by which to adjust the difficulty. When the act of the party is considered, executing his notes for the payment of money, without objection, together with the understanding of other purchasers at the sale, that they could be compelled to pay in specie, we may add there cannot be a well founded doubt, that the complainant is mistaken in the effect he now ascribes to the representations made at the sale.

The decree of the chancellor must be reversed, and a decree be here rendered dismissing the bill.