| 74 | 487 |
| 96 | 570 |

# Mobile Life Insurance Co. *v.* Pruett.

### *Action on Policy of Life Insurance.*

1. *Action against corporation ; where brought.*—By express statutory provision (Sess. Acts 1878–9, p. 197), an action against a private corporation, founded on a transitory cause of action, may be brought in any county in which the corporation transacts business through its agents, without regard to the location of its principal office, or its ownership of real estate ; and this statutory provision is not invalid on constitutional grounds.

2. *Policy of life-insurance; conditions as to payment of premiums.*—A policy of life-insurance, in the usual form, is not an assurance for a single year, with a privilege of renewal from year to year, by paying the annual premiums, but is an entire contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums ; and while the payment of the annual premiums, on the day specified, is not a condition precedent, the time of payment is of the essence of the contract, and non-payment *ad diem* involves absolute forfeiture.

3. *Parol evidence; admissibility to vary written.*—When a contract is reduced to writing, the written memorial becomes the sole expositor of its terms, and all antecedent negotiations and agreements are merged in it ; and oral evidence of such antecedent negotiations and agreements can not, in the absence of fraud or mistake, be received to contradict the recitals of the writing.

[Mobile Life Insurance Co. v. Pruett.]

4. *Same; as to terms of policy of insurance.*—This rule applies to a policy of life-insurance, and forbids the admission of oral evidence to contradict or vary the terms of the policy, as to the time or place at which the annual premiums are payable, the consequences of non-payment on the day specified, and other material stipulations therein expressed.

5. *Alteration of contract.*—Though the terms of a written contract can not be contradicted or varied by proof of inconsistent verbal agreements made contemporaneously or previously, it may be modified or rescinded by a subsequent verbal agreement; and the mutual assent of the parties is a sufficient consideration to sustain such modification or rescission.

6. *Modification of policy by subsequent dealings; waiver of forfeiture.* In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the non-payment of annual premiums on the day specified, the test is, whether the insurer, by his course of dealing with the assured, or by the acts and declarations of his authorized agents, has induced in the mind of the assured an honest belief that the terms and conditions of the policy, declaring a forfeiture in the event of non-payment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day, or in a different manner; and when such belief has been thus induced, and the insured has acted on it, the insurer will not be allowed to insist on the forfeiture.

7. *Same; taking note for premium, and extending day of payment.* When a promissory note is accepted for the first premium, and the day of payment is afterwards extended by special agreement, these facts, without more, do not justify the inference by the assured that similar indulgence will be granted as to other premiums when they fall due.

8. *Acceptance of premium after forfeiture.*—The acceptance of a premium by the insurer or his authorized agent, after a forfeiture has been incurred by non-payment on the day specified, if made with knowledge of the facts, is a waiver of the forfeiture; but this effect can not be attributed to the acceptance of a premium by an agent of the insurer, after the death of the person assured, when it is shown that the fact of such death was known to the person who made the payment, but was not known or communicated to the agent.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Wm. H. Pruett against the appellant, a domestic corporation, and was founded on a policy of insurance, which the plaintiff had effected with said corporation, on the life of his wife, Mrs. Ann B. Pruett. The assured died on or about the 10th November, 1880, and the action was commenced on the 31st January, 1881. The policy was for $2,500, and was dated the 19th April, 1879; the annual premium was $6%.12, "to be paid on or before the 31st day of October in every year, during the continuance of this policy;" and the following conditions and stipulations were contained in it: "This policy is issued by said company, and is accepted by the assured, on the following express conditions and agreements: . . 2. That the several payments herein specified to be made by the assured shall be made, in lawful money of the United States, and not otherwise, on or before the days upon which they become due, at the office of said company in

the city of Mobile, or to their duly authorized agents, when they produce receipts signed by the president, vice-president, or secretary of said company; and that in case of default in said payments, or either of them, then this policy shall become void, and all payments made thereon shall be forfeited. . .
7. That this policy shall not take effect, until the first payment of premium shall have actually been made, during the life of the assured; that any alteration or waiver of the conditions of this policy, unless made at the home office, and signed by the president, vice-president, or secretary of said company, shall not be considered as valid; and that the receipt of any thing by an agent, excepting lawful money of the United States, in settlement of premiums, shall not be considered as binding on said company, unless specially agreed to; which agreement must be indorsed hereon, and signed by an officer of said company." The following memoranda were also printed on the back of the policy: "*Conditions of payments of premiums:* The premiums on this policy due and payable at the office of the company in Mobile, Alabama; but, for the convenience of the policy-holder, the company may, unless otherwise requested, transmit to the agent, through whom this policy was issued or last renewed, the receipts for renewal premiums, to be delivered on payment of the stated premium; and the assured is hereby notified, that the only evidence to him, of the authority of any agent to receive any premiums on account of this policy, is a receipt in printed form, signed by the president or secretary of this company, and countersigned by the agent to whom the money is paid."

The defendant filed four special pleas in abatement, each averring, in substance, that it was a freeholder of the county of Mobile, having its residence, office and principal place of business in the city of Mobile, and was not subject to be sued in any other county. The court sustained demurrers to each of these pleas, and the defendant then pleaded the general issue and several special pleas in bar, averring that the policy had become forfeited and void, before the death of the assured, by reason of the non-payment of the annual premium due and payable on the 31st October, 1880. The plaintiff took issue on the first plea, and replied to the several special pleas, averring a waiver of the prompt payment of the premium at maturity, and its subsequent payment to an authorized agent of the defendant, and the retention of such payment by the defendant. Demurrers were interposed to each of these replications, and numerous causes of demurrer specially assigned; all of which the court overruled, and held the replications sufficient. The opinion of this court renders it unnecessary to set out these pleadings in detail.

On the trial, as the bill of exceptions states, the plaintiff testified as a witness for himself, " among other things, that on the 3d April, 1879, T. G. Fowler, the general State agent of the defendant company, called on him at Batesville in said county, where he resided, and solicited him to take policies on his own and his wife's lives; that he agreed to take a policy for $2,500 on each, and made applications for them in the usual form, and gave said applications to said Fowler, to be forwarded to the home office in Mobile, for acceptance or rejection; that he and his wife then and there executed and delivered to said Fowler, in payment of the first year's premiums on said policies, their joint waiver promissory note, payable to said company, or its order, at Uniontown, Alabama, for $148.53, being the amount of the premiums, with interest to date of payment of note; that said note was not paid on October 1st, 1879, when it fell due, but was extended to November 1st, in accordance with an agreement made and indorsed on the back thereof." The note was here produced, and was offered in evidence; the indorsement on it, which was signed by said T. G. Fowler, being in these words: " I have agreed that this note shall be extended to November 1st, 1879, if Mr. Pruett should desire it."

" Plaintiff further testified, also, that after he had given said applications to Fowler, and had signed and handed the note to him, his attention was called to the fact that said note was made payable at Uniontown, and he told Fowler that he would not take the policies, if he had to pay his note for future premiums in Uniontown; that said Fowler then and there agreed to send the note to H. C. Jernigan, the local agent of said corporation at Three Notch road, about thirty miles distant from plaintiff's home and place of business, and would require said Jernigan to call on plaintiff for payment of said note, and for future premiums due on the policies; that he then told Fowler to forward the applications, and again received them from him, through the mail, a few days after their date, April 19, 1879. . Plaintiff testified, also, that said note was not paid at maturity, nor until about the latter part of January, or the first part of February, 1880, and was then paid to said H. C. Jernigan, who presented said note to plaintiff in person, coming to Batesville to do so; that about the 29th January, 1880, he paid to said Jernigan an irregular premium on said policies, carrying them from April 19th to October 31st, 1880, by giving the joint waiver note of himself and his wife to said Jernigan, payable October 31st, 1880. And plaintiff introduced the receipt for this premium," which was dated Mobile, October 31st, 1879, acknowledged the receipt of $38 " for irregular annual premium on policy No. 8,169, issued by this company, on the life of Ann B. Pruett, of Batesville, Alabama, which continues said policy in force until

the 31st day of October, 1880;" and was signed by "*H. M. Friend*, secretary," but declared on its face, "This receipt is not binding, until countersigned by T. G. Fowler, agent at Uniontown.

"Plaintiff, resuming his testimony, further stated, that said note was not paid at maturity, and is not yet paid : that Mrs. Ann B. Pruett, the assured, died on 10th November, 1880, ten days after the annual premium for the year beginning October 31st was due; that said Jernigan never did call on plaintiff or his said wife, in accordance with the agreement between himself and said Fowler, for the payment of the note due October 31st, 1880, nor for the premium due on that day ; that he wrote to said Fowler on the 13th November, 1880, and informed him of the death of his said wife; that afterwards, to-wit, on November 24th, 1880, he was informed by said Fowler that the company had declared the policy forfeited for non-payment of the premium due October 31st, 1880, and declined to pay it; that on the 26th November, 1880, he (plaintiff) went to Three Notch road, and paid the sum of $140.99, with interest from October 31st, to said H. C. Jernigan, defendant's agent, and told him the said amount was for a premium due on said policies October 31st, 1880, and took said Jernigan's receipt therefor; and that he did not, when he paid this money, inform said Jernigan that Mrs. Pruett was dead, nor that the defendant company had declared the policy forfeited." The receipt, which was produced, was signed " *Theo. G. Fowler*, St. agent, by *H. C. Jernigan*."

" The defendant, having objected, from time to time, to the introduction of much of this evidence as it was introduced, which objections were overruled, now moved the court as follows: 1. To rule out and exclude from consideration by the jury all of plaintiff's said testimony relating to the agreement stated to have been made with said Fowler, as to the manner of the payment of the premiums on the policies, because it was contradictory of the written policy shown to have been entered into subsequently, and because it was irrelevant and immaterial to the issue. The court overruled and refused this motion, and the defendant excepted. 2. The defendant then further moved the court to rule out and exclude from consideration by the jury all of plaintiff's said testimony relating to the indulgence given on the note dated April 3d, 1879, its time, place, and manner of payment (except wherein the note itself gave an extension of time on application), because such testimony contradicts and varies the written contract of insurance entered into after said note was given, and contradicts and varies the express terms of the note itself ; and because said testimony was irrelevant and immaterial to the issues. The

court overruled and refused this motion, and the defendant excepted.    3. The defendant then further moved the court to rule out and exclude from consideration by the jury the paper writing given to plaintiff by said Jernigan on the 26th November, 1880, purporting to be a receipt for premiums due October 31st, 1880, because it was not shown that said Jernigan had authority to give out a receipt not signed by the president, vice-president, or secretary of said defendant company; and because it contradicts and varies the terms of the policy; and because it is in express violation of the terms of the policy. The court overruled said motion, and refused to exclude said evidence; and the defendant excepted to this ruling.

"The defendant then introduced said H. C. Jernigan as a witness, and proposed to prove by him in these words: that he was not in the habit of giving out receipts for premiums as agent of said defendant company, unless such receipts were first signed by the president, vice-president, or secretary of said company; and that said receipt so given to plaintiff, dated November 26th, 1880, was the only one that he ever gave out that was not signed by the president, vice-president, or secretary of said company. The plaintiff objected to this testimony, and the court sustained the objection, and excluded the evidence; to which ruling the defendant excepted. The defendant offered to prove by said Jernigan, also, that he, as the local agent of the defendant company, had no power or authority to issue a receipt for renewal premiums on any policies, unless such receipts were first signed by the president, vice-president, or secretary of said company. Plaintiff objected to this evidence also, and the court excluded it; to which ruling the defendant excepted. The defendant then offered to prove by said Jernigan, that he, as the agent of said defendant company, had never been in the habit of receiving and receipting for premiums on policies, in any other manner than that provided in the policies themselves. The plaintiff objected to this evidence, and the court sustained the objection; to which ruling, excluding said evidence, the defendant excepted."

The rulings of the court on the pleadings, and the several rulings on evidence to which exceptions were reserved, are now assigned as error.

JNO. D. ROQUEMORE, and MACARTNEY & CLARKE, for appellant.—(1.) By express constitutional provision, "corporations shall have the right to sue, and shall be subject to be sued, in all courts, in like cases as natural persons."—Art. XIV, § 12. The purpose and policy of this provision, in harmony with other provisions in the same instrument, is to place natural and artificial persons on an exact equality before the law—to confer

[Mobile Life Insurance Co. v. Pruett.]

the same rights and privileges on each, and to prevent any unjust discrimination; and this construction has received the sanction of this court.—*S. & N. Ala. Railroad Co. v. Morris*, 65 Ala. 193; *Ala. Gold Life Ins. Co. v. Cobb*, 57 Ala. 547. The right to sue, and the liability to be sued, "in all courts, in like cases as natural persons," necessarily involves and secures the use of the same process, the same modes and forms of proceeding, the same rules of pleading, practice, and evidence. Less than this is not legal equality. The general statute (Code, § 2928) secures to every freeholder the right to be sued only in the county in which he has a permanent residence; while the recent statute, approved February 13th, 1879, attempts to take away this right from corporations, foreign and domestic alike, and subject them to suit in any county in which they transact business through agents. A domestic corporation is a resident and citizen of the State by which its charter is granted; and when it owns real estate in the county in which its principal place of business is situated, it is a freeholder of that county. *Telegraph Co. v. Pleasants*, 46 Ala. 645; *Louisville v. Letson*, 2 How. 497; *Ontario Bank v. Bunnell*, 10 Wendell, 186; *People v. Utica Ins. Co.*, 15 Johns. 358; *Sherwood v. Railroad Co.*, 15 Barb. 650; 2 Gall. 105; 10 How. Pr. 403; *Morris v. Hall*, 41 Ala. 510.

2. The replications to the several pleas in bar were defective in form and substance. The prompt payment of premiums is of the very essence of contracts of life-insurance; and whether it be held a condition precedent or subsequent, the company has a right to insist upon payment *ad diem*, and to declare and enforce a forfeiture, as stipulated, in the event of non-payment. May on Insurance, 406; Bliss on Life Insurance, 257–74; *Thompson v. Life Ins. Co.*, 14 Otto, 252; *Insurance Co. v. Davis*, 95 U. S. 425; *N. Y. Life Ins. Co. v. Statham*, 93 U. S. 24. The alleged oral agreement, as to where and how the premiums might be paid, was made before the policy was issued, and can not vary its terms.—*Thompson v. Life Ins. Co.*, 14 Otto, 252; *Sullivan v. Cotton States Ins. Co.*, 3 Big. Ins. Cases, 543, or 43 Geo. 423. The policy required that the premiums should be paid at the domicile of the company in Mobile, and to an authorized agent having a receipt signed by one of several named officers; and the payment to Jernigan fulfilled neither of these conditions.—95 U. S. 425; *Bouton v. Amer. Life Ins. Co.*, 25 Conn. 542; *Catoir v. Amer. Life Ins. Co.*, 4 Vroom, N. J. 487. The parties should be held strictly to the contract made by them.—14 Vesey, 428; 93 U. S. 24; 100 Mass. 500. If this oral agreement were valid for any purpose, it could not extend the time of payment of the premium beyond the death of the assured and notice to the beneficiary that

the policy had been cancelled. No contract was in force after the cancellation of the policy and notice thereof; and the subsequent payment to Jernigan could neither revive the old contract, nor make a new one.—*Ins. Co. v. Mowry*, 96 U. S. 544; *Want v. Blunt*, 12 East, 183; 8 Geo. 534, or 1 Big. Cases, 83; 2 Common Bench, N. S. 257; 3 *Ib.* 622. The acceptance of the premium by Jernigan, under these circumstances, was not a waiver of the forfeiture.—*Bennecke v. Insurance Co.*, 105 U. S. 359; *Security Ins. Co. v. Fay*, 22 Mich. 467.

3. The court erred, also, in its several rulings on the evidence. The verbal agreement, to which the plaintiff was allowed to testify, was merged in the written policy afterwards accepted, so far as inconsistent with the terms of that policy. *White v. Ashton*, 51 N. Y. 280; *Insurance Co. v. Mowry*, 96 U. S. 544; *White v. Walker*, 31 Ill. 422; *Faxton v. Faxton*, 28 Mich. 159; Bigelow on Estoppel, 437–41. The oral evidence as to the indulgence given on the note contradicted the terms of the written contract, and ought to have been ruled out.—104 U. S. 252; 4 Vroom, N. J. 487, and other authorities *supra*. The receipt given by Jernigan, under the circumstances proved, was not competent evidence.—95 U. S. 425; 25 Conn. 542; 4 Vroom, 487; 105 U. S. 359; *Powell v. Henry*, 27 Ala. 612; *Railroad Co. v. Jay*, 65 Ala. 113. The testimony of Jernigan was admissible, certainly in rebuttal of plaintiff's own testimony as to the same matters.—96 U. S. 234; 96 *Ib.* 84; 4 Vroom, 487.

Pugh & Merrill, *contra.*—1. A corporation is an incorporeal entity, incapable of having a permanent place of residence, or being domiciled at any one place, but acting only through its agents, and residing wherever they reside or act, at least for the purposes of suit; and if it has several places of business, it is deemed in law a resident of each of them, for the purposes of venue in personal actions.—*Hudson River Railroad Co. v. Pond*, 17 How. Pr. 543. The statute which exempts a citizen who is a resident freeholder from liability to suit in any other county than that of his residence (Code, § 2928), is an exception to the general law regulating the venue in transitory actions, and is founded on principles of high public policy, involving the performance by such citizens of public duties which can not be devolved on corporations.

2. The forfeiture clause in a policy of insurance, like other forfeitures, is looked on with disfavor by the courts; and being intended for the benefit of the insurer, slight evidence of waiver on his part is sufficient to show that it has been waived; and this may be done either by express agreement, or by proof of subsequent dealings on which the insured relied, on which

[Mobile Life Insurance Co. v. Pruett.]

he had a right to rely, and which were calculated to make him believe that prompt payment would not be insisted on.—*Life Ins. Co. v. Norton*, 96 U. S. 234; *Ripley v. Ætna Ins. Co.*, 29 Barb. 557; *Mutual Life Ins. Co. v. French*, 30 Ohio St. 240, or 27 Amer. Rep. 443; *Mayer v. Life Ins. Co. of Chicago*, 38 Iowa, 304, or 18 Amer. Rep. 34; *Howell v. Knickerbocker Life Ins. Co.*, 44 N. Y. 276; 18 Barbour, 541; *Murphy v. So. Life Ins. Co.*, 3 Baxter, 440, or 27 Amer. Rep. 761; 73 N. Y. 516, or 29 Amer. Rep. 200; *N. Y. Life Ins. Co. v. Eggleston*, 96 U. S. 572; *Insurance Co. v. Wolfe*, 95 U. S. 326; *Miller v. Life Ins. Co.*, 12 Wallace, 285; 13 Wallace, 222; *Helme v. Phil. Life Ins. Co.*, 61 Penn. 107; *Henley v. Life Asso.*, 69 Mo. 380; 77 Ill. 384; *Ins. Co. v. Davis*, 95 U. S. 425; *Knight v. Rowe*, 2 Car. & P. 246; *West v. Blakeway*, 2 Man. &. Gr. 729; *Leslie v. Knickerbocker Ins. Co.*, 63 N. Y. 27; *Cotton States Ins. Co. v. Lester*, 62 Geo. 247, or 35 Amer. Rep. 122; *Ins. Co. v. Pierce*, 75 Ill. 426; *Thompson v. Ins. Co.*, 52 Mo. 469; *Ins. Co. v. Wagner*, 80 Ill. 410; *Ins. Co. v. Robertson*, 59 Ill. 123.

3. The acceptance of the note operated as a payment of the premium, so far as to keep the policy alive.—*Mutual Life Ins. Co. v. French*, 30 Ohio St. 240, or 27 Amer. Rep. 443; *Mc-Allister v. Mutual Life Ins. Co.*, 3 Amer. (101 Mass.) 404. These authorities, and those above cited, abundantly show that parol evidence is admissible to prove that, by agreement, a different time and place was fixed for the payment of the premiums from that named in the policy. The policy was in force on the 31st of October, although the note was not then paid, and the company had no right to declare a forfeiture on that day without notice to the assured.—*Mayer v. Mutual Life Ins. Co.*, 38 Iowa, 304. Both Fowler and Jernigan were held out to the world by the defendant as its agents, and the contract here sued on was contracted through their agency; and the defendant will not be allowed to disown its responsibility for their acts.—*Insurance Co. v. McCain*, 6 Otto, 84; *Piedmont & Arlington Life Ins. Co. v. Young*, 58 Ala. 476. Even if Jernigan had no authority to receive the money, the retention of the money by the defendant is a ratification of his unauthorized act. The provision in the policy in reference to the signature to receipts, being intended for the protection and benefit of the company, might be waived by it, and was waived on the facts proved.

BRICKELL, C. J.—The demurrers to the pleas in abatement were properly sustained. A suit against a corporation, foreign or domestic, may be maintained, when in its nature the cause of action is transitory, founded upon a matter or transac-

tion which might have taken place anywhere, in any county in which the corporation transacts business by agents, without regard to its proprietorship of real estate, or its principal place of business.—Sess. Acts 1878-9, p. 197; *Home Protection Ins. Co. v. Richards, ante*, p. 466.

The policy of life-assurance, upon which the action is founded, " is not an assurance for a single year, with a privilege of renewal from year to year, by paying the annual premium, but it is an entire contract of assurance for life, subject to discontinuance and forfeiture for the non-payment of any of the stipulated premiums. Such is the form of the contract, and such is its character."—*New York Life Insurance Co. v. Statham*, 93 U. S. 24. Speaking of a similar policy, it was said in *Brooklyn Life Ins. Co. v. Bledsoe*, 52 Ala. 551 : " The policy, by its terms, is forfeitable—is to cease and determine, and the insurer to be freed from all liability—if the annual premiums were not paid when they became due and payable. The continuance of the policy as a contract—its life—depended on the prompt payment of the premiums. The payment was manifestly the *condition precedent*, on which the parties respectively stipulated for its continuance, and on the non-performance of which they assented to its extinction." There are many authorities holding that, by the payment of the first premium, an insurance for one year is obtained, with a right to its continuance from year to year during life, upon the payment of the stipulated premiums. The subsequent payments rest in the option of the assured, and payment *ad diem* is therefore a *condition precedent* to continuous liability of the insurers. In the case first referred to, and in subsequent cases, the Supreme Court of the United States have rejected the theory, that the condition is *precedent*, declaring it *subsequent*; and we prefer to follow its decisions upon this point. All the authorities agree, that the time for payment is material—is of the essence of the contract; and non-payment at the day appointed involves absolute forfeiture, when, as in the present case, such are the express terms of the contract.—*New York Life Ins. Co. v. Statham, supra.*

The stipulation of the policy is not only for the payment of the premiums at times stated, but the place of payment (the office of the company in the city of Mobile) is appointed, unless payment is made to an agent of the company, producing a receipt signed by the president, vice-president, or secretary. The verbal agreement, of which the Circuit Court received evidence, made with Fowler, the agent of the company soliciting the insurance, through whom the application for the policy was forwarded, is in direct variation and contradiction of these clearly expressed terms of the policy, and, if it is of any validity,

[Mobile Life Insurance Co. v. Pruett.]

changes the legal effect of the contract, and the duties and obligations of the insurer and the assured. The premiums are not payable at stated times, but on the demand of the company; the assured is not bound to take notice when the premium is payable, but can await notice of the fact from the insurer; the place of payment is not that appointed in the policy, but is transferred to a point at or near the domicile of the assured; and payment may be made to an agent, upon any receipt the assured chooses to take, though he does not obtain a receipt signed by either of the designated officers of the company.

When a contract is reduced to writing, the written memorial becomes the sole expositor of its terms; all antecedent negotiations, agreements, or understandings, are merged in it; and to vary or contradict it, evidence of them is not admissible, unless it be clearly shown that a party was by fraud induced to enter into the contract, or that by mistake the intention of the parties is not expressed.—*Mead v. Steyer*, 5 Port. 498; *Paysant v. Ware*, 1 Ala. 160; *Hair v. LaBrouse*, 10 Ala. 548. A policy of life-insurance is within the influence and operation of this conservative principle, and the presumption is conclusive, that in it all prior verbal negotiations, agreements, or arrangements are merged. It is usually prepared with much care, for the purpose of embodying the entire agreement of the parties—to withdraw from the uncertainty of parol evidence all the terms and conditions of the contract, and the rights, duties and obligations of the respective parties, that future controversy may be avoided. The amount of the premium, when and where it is payable, the consequence of default in payment, the event upon which the principal sum is payable, and its amount, are all expressed clearly in the policy. It was issued after the verbal agreement of which evidence was received, and was without objection accepted and retained by the assured. The most painful uncertainty would attend such contracts, if it was not taken and accepted as the entire engagement of the parties, and all mere parol evidence of prior agreements or negotiations was not excluded.—*Ins. Co. v. Mowry*, 96 U. S. 547; *Thompson v. Ins. Co.*, 104 U. S. 259. The evidence of the parol agreement imputed to the agent Fowler, before the issue and delivery of the policy, ought to have been excluded.

A contract in writing can not be varied or contradicted by evidence of prior or contemporaneous inconsistent verbal agreements, but it may, by parol agreements made subsequently, be rescinded or modified; and to support the rescission or modification, no other consideration is necessary, than the mutual agreement of the parties. The condition for the payment of the premiums at the times stated, and the place appointed, was

32

inserted for the benefit of the company; and if a breach of the condition occurred, upon its election it depended whether advantage of it would be taken, or whether it would be waived; or, before forfeiture, by a new agreement, express or implied, payment at the time and place fixed could be waived or dispensed with, and some other mode of payment substituted. There is often much of difficulty; in the absence of written evidence of a new agreement—when the agreement is to be inferred or implied from circumstances, or dispensing or waiving a forfeiture is matter of deduction from the acts or declarations of the parties—in determining whether there has been a new agreement made, or there has been a dispensation or waiver of the forfeiture, because of the failure to comply strictly with the requirements of the policy. The true test is, whether the insurer, by the course of dealing with the assured, or by his acts or declarations, or by the acts or declarations of his authorized agents, has induced the honest belief in the mind of the assured, that the terms and condition of the policy providing for a forfeiture, if payment of the premiums is not made at the time, and in the manner appointed, will not be enforced, but that payment will be accepted, if made at another time, or in another manner. Having induced such belief, if the assured in good faith relies upon it, intending to make payment in accordance with it, justice and morals forbid that the insurer should take advantage of a forfeiture that would not have occurred, if he had not induced it.—*Ins. Co. v. Wolff*, 95 U. S. 326; *Thompson v. Ins. Co.*, 104 U. S. 252; *Ins. Co. v. Norton*, 95 U. S. 234; *Ins. Co. v. Mowry, Ib.* 544; *Ins. Co. v. Eggleston, Ib.* 572; *Phœnix Ins. Co. v. Doster*, 106 U. S. 30.

Excluding from consideration, as we must, the antecedent verbal agreement, imputed to the agent Fowler, no fact or circumstance is shown, calculated to induce in the mind of the assured a reasonable belief that payment of the premiums in any other mode, or at any other time, than that stated in the policy, would be accepted by the company. The acceptance of a note for the first premium, and the subsequent extension of the day of its payment, was an arrangement in reference to that premium only; and unless a similar note had been taken for a subsequent premium, it afforded no room for a belief that a like indulgence would be given as to the payment of such premium.

A receipt of a premium, after a breach of the condition for its payment has occurred, is, doubtless, a waiver of the forfeiture. The payment must, however, be made to the insurer, or to an agent having authority to receive it. And it must be made fairly and honestly; there must be no misrepresentation or concealment of material facts known to the party making

[Robbins v. Battle House Company.]

the payment, of which the insurer can not reasonably be presumed to have knowledge. Passing all consideration of the fact, that there is not, probably, legitimate evidence that Jernigan had authority to receive payments of past-due premiums, waiving consequent forfeitures, the payment made to him was subsequent to the death of Mrs. Pruett, and after the assured had been informed that the policy was forfeited by the failure to pay the premiums according to its terms. This fact, and the death of Mrs. Pruett, were not communicated to Jernigan, when he received the premium. It is not too much, probably, to say the inference is irresistible, that they were purposely concealed from him. When the death of the assured occurs, after a failure to pay a premium according to the terms and conditions of the policy, acts of an agent of the insurer done in ignorance of the death, which might otherwise constitute a waiver of the consequence resulting from the failure to pay the premium, are not of any effect.—Bliss on Life Ins. § 190.

We have not deemed it necessary to pass upon the numerous questions arising from the rather voluminous pleadings found in the record; there is no necessity for it, and no practical benefit could result from it. What has been said, will enable the Circuit Court, on another trial, to make a just and legal disposition of the case.

Reversed and remanded.