SUPREME LODGE KNIGHTS OF PYTHIAS OF THE WORLD *v.*
HELEN QUINN ET AL.

1. BENEVOLENT SOCIETY.  *Officers.  Waiver of forfeiture.  By-laws.*

   There can be no waiver by the officers of a mutual benefit society of a forfeiture of membership incurred under its laws, without knowledge of the facts touching the subject of the waiver.

2. WAIVER.  *Definition.*

   A waiver is the intentional relinquishment of a known right, and it implies an election to forego some advantage upon which the party, at his option, might have insisted.

FROM the circuit court of Attala county.

HON. WILLIAM F. STEVENS, Judge.

Helen Quinn and another, were plaintiffs, and the Supreme Lodge Knights of Pythias of the World was defendant in the court below.  Frank Quinn, deceased, was in his lifetime a member of the endowment rank of the Knights of Pythias, and as such obtained an insurance policy or benefit certificate in the order for $3,000, payable to his wife and child.  At the time of issuance of the certificate his wife was Julia Quinn, who died shortly thereafter, leaving one child.  Quinn, the insured, afterwards married the appellee, Helen Quinn; the certificate provided for such case and made the last wife together with the child by the previous marriage, the beneficiaries.

Quinn, the defendant, forfeited his membership in the order by a failure to pay monthly dues.  He became seriously ill, and his illness was protracted.  While confined to his bed, and after it became quite apparent that he would not recover, he

procured a letter to be written, June 20, 1899, to the board of control of the endowment rank of the Knights of Pythias, at Chicago, Ill., in which he remitted nine dollars, the monthly dues in arrear, being for the months of April, May and June, 1899. In this letter he gave no intimation of his bad health. On June 29, 1899, the board of control answered Quinn's letter, inclosing a receipt for the nine dollars, and informed him that his forfeiture had been canceled and he placed in good standing, provided he was then in good health. Quinn died July 2, 1899, and this suit was begun by appellees—Quinn's last wife and child by the former one—to collect the benefit certificate. It appeared upon the trial that Quinn was proximately in a dying condition when he remitted his dues and when he received the letter conditionally remitting his forfeiture and reinstating him in the order, but Mrs. Quinn and her sister testified that a letter of earlier date than June 29 was received by decedent from the officers of appellant, waiving the forfeiture and reinstating him as a member unconditionally. They fixed the date of this letter as June 24, 1899, and swore that it had been lost, and after the most diligent search could not be found.

The by-law of the appellant relating to the subject of forfeitures and reinstatements, which was read in evidence, is as follows:

"Art. IV., sec. 7. Monthly payments and dues of members holding certificates of endowment shall be due and payable to the secretary of the section, without notice, on the first day of each and every month; and a failure to make such payment on or before the tenth day of each month shall cause, from and after such date, a forfeiture of the certificate of endowment, and all right, title and interest such member or his beneficiaries may have in and to the same, and membership shall cease absolutely. In case of such forfeiture, membership may be regained by making application in the form prescribed for new applicants, the payment of required membership fee, and surrender of the forfeited certificate. If approved by the medical

examiner in chief, and accepted by the board of control, a new certificate shall be issued, and the rating shall thereafter be at the age of nearest birthday to the date of the last application."

There was no evidence whatever that the officers of appellant had any knowledge of the condition of Quinn's health at the time it was claimed that they waived his forfeiture and reinstated him as a member of the order.

The defendant, appellant, asked for a peremptory instruction in its favor; the court below declined to grant the same, and the case was submitted to a jury, resulting in a verdict and judgment for the plaintiffs, from which defendant appealed to the supreme court.

*Mc Willie & Thompson*, for appellant.

The theory of the plaintiffs that there was a waiver of the condition of good health will not bear criticism. It is equivalent to saying that the board waived its rights to reject the application on account of Quinn's bad health, a fact of which it had no knowledge. An acceptance of the arrearages without knowledge of his grave illness showed no intention to waive. *Insurance Company* v. *Pruett*, 74 Ala., 487; 3 Am. & Eng. Enc. L. (2d ed.), p. 1091, and notes.

Waiver is a question of intent, and no one can be bound by a waiver of his rights, unless it is distinctly made and with full knowledge of the rights he intends to waive. 28 Am. & Eng. Enc.. L. (1st ed.), pp. 527, 528.

It has frequently been decided in express terms that the acceptance of arrearages does not operate as a waiver if the custom of the association was to receive dues in arrear only if the insured was in good health, and in fact that insured at the time of such receipt was not in good health. 2 Bacon on Ben. Soc., sec. 431, p. 856; *Lewis.* v. *Insurance Company*, 44 Conn., 73; *Leffingwell* v. *Grand Lodge*, 53 N. W. Rep. (Iowa), 243; *Gabbutt* v. *Association*, 51 *Ib.*, 148; *Sherrett* v. *Royal Clan*, 37 Ill. App., 446.

Apart from the board's lack of that knowledge of the true condition of affairs essential to the establishment of a waiver, it may be said, on the authority of numerous well considered cases, that the officers had no power to waive the provisions of the general laws in respect to good health at the time of reinstatement.

It is not pretended that the deceased made any showing whatever in respect to his health, while under the general laws he had to secure the approval of his application by the medical examiner in chief, and pay a higher rate, or, if his forfeiture was without fault on his part and was occasioned by nonpayment of dues, he was required to furnish satisfactory evidence of good health at his own expense. The matter of the good health of one applying for reinstatement to membership is just as much one going to the substance of the contract as in the case of original applications for membership, and the officers of a mutual benefit association are without power to dispense with the requirements of the laws of the association in respect to that subject. In mutual associations each member has an interest in the enforcement of all requirements going to the substance of the contract, and officers are without power to affect this right by waiving such requirements. 2 Bacon on Ben. Soc., sec. 426, p. 840; *May* v. *N. Y., etc., Society,* 14 Daly, 389; *Nagel* v. *Glasburger,* 10 N. Y. Supp., 503; *Brady* v. *Coachman's Ben. Association,* 14 *Ib.,* 272; *Mattoon* v. *Weatworth,* 4 Weekly L. Bull., 513; *Frey* v. *Fidelity Lodge,* 6 Pa. Co. Ct. R., 435; *Harvey* v. *Grand Lodge,* 50 Mo. App., 472; *Coleman* v. *Knights of Honor,* 18 Mo. App., 189; *Grand Lodge* v. *Elsner,* 26 Mo. App., 108; *Lyon* v. *Supreme Assembly,* 26 N. E., 236; *Brotherhood's case,* 31 Beav., 365, 375; *Burbank* v. *Association,* 144 Mass., 437; *McCoy* v. *Church,* 152 Mass., 273; *Baxter* v. *Insurance Co.,* 1 Allen, 294; *Evans* v. *Insurance Co.,* 9 Allen, 329; *Hale* v. *Insurance Co.,* 6 Gray, 169; *Mulroy* v. *Insurance Co.,* 2 Allen, 116; *Sweet* v. *Society,* 78 Me., 541; *Lyon* v. *Royal Society,* 153 Mass., 86;

*Ancient Order* v. *Jesse*, 50 Ill. App., 101; *Froehley* v. *Insurance Co.*, 32 Mo. App., 312; *Mulroy* v. *Insurance Co.*, 4 Allen, 116; *Gibbs* v. *Insurance Co.*, 9 Daly, 203; *Leonard* v. *Insurance Co.*, 97 Ind., 306.

If the reinstatement of the deceased was accompanied by the condition of his good health expressed in the letter of June 29, 1899, there can, of course, be no question about the defendant's right to have the jury directed to find in its favor. 2 Bacon on Ben. Soc., secs. 431, 434, pp. 856, 878. If the jury found for the plaintiffs on the theory that on June 24, 1899, the deceased received the alleged lost or destroyed letter, and that such letter announced the receipt of his arrearages and his reinstatement to membership, and there was no other theory upon which they could so find, the verdict is manifestly wrong, not only for the reason that it leaves out of view the fraudulent concealment of Quinn's physical condition, which would of itself nullify his reinstatement, whenever made, but also because the officers were without power in the premises, and had no knowledge of the facts touching the pretended waiver. All the members of a fraternal order are conclusively presumed to know its laws and rules. *Coleman* v. *Supreme Lodge*, 18 Mo. App., 189; *Borgruefe* v. *Supreme Lodge*, 22 Mo. App., 140; *Miller* v. *Association*, 42 N. J. Eq., 460.

*S. L. Dodd*, for appellees.

The testimony of Mrs. Quinn and of Mrs. Woods makes it perfectly manifest that Quinn was first reinstated with the order when he remitted the $9 in payment of April, May, and June assessments without any conditions or other qualifications by the letter of June 24, and that the letter of June 29 was plainly an afterthought, an effort to destroy the effect of the unqualified reinstatement of Mr. Quinn into the order. It was the province of the board of control of the endowment rank of the Knights of Pythias to reinstate Quinn on any terms it saw proper, and this they did, as was plainly shown by the

testimony of the two witnesses named in the lost letter, the contents of which were so plainly and distinctly stated by the witnesses.    It was certainly a rule of the appellant to require all suspended members to submit to a medical examination as a condition precedent for reinstatement into the order, but this was expressly waived by the act of the order in reinstating him without even mentioning anything of the kind.

In 2 Beach on Insurance, section 762, we find the following: " If an insurance company, after the issuing of a policy, having received knowledge of facts which would avoid the policy, nevertheless receives premiums from the insured, it is estopped from claiming a forfeiture." *Schwarzbach* v. *Protective Association* (1885), 25 W. Va., 622; *Insurance Co.* v. *Amerman* (1895), 16 Ill. App., 528, and authorities there cited.

The letter from Quinn to the board of control at Chicago, which board alone had the power to reinstate suspended members for nonpayment of dues, assessments, etc., plainly shows his application with the money in payment of his dues for April, May and June, was notice to the appellant, if, indeed, it should have had any further notice of the facts that Quinn was in arrears, and every other material fact which would avoid the policy, and how does it act ?    It receives the money and tells him to pay all future assessments to Lowrance, secretary of Sec. 414, at Durant, Miss.

TERRAL, J., delivered the opinion of the court.

Whether the board of control of the endowment rank of the Knights of Pythias may waive a forfeiture of membership in the order, in contravention of the laws of the order, we will not decide.    But, in order that a waiver by the board of control of a forfeiture of membership may be effectual to restore a party to membership, it must be made with full knowledge of the facts.    It is undisputed here that Quinn, the insured, had, by the nonpayment of his April, May and June dues, forfeited his membership in the order, and that on the twentieth of June,

when he sent forward his dues for reinstatement, he was seriously sick, in fact, on his deathbed, and the laws of the order only authorized his reinstatement upon satisfactory evidence of his good health. In the letter accompanying the remittance of his dues there is not a syllable relating to his health. In this state of the case there could be no reinstatement of Quinn to membership in the order, by the mere payment of his past dues, without knowledge of his physical condition, and the claim of his beneficiaries to his reinstatement is groundless. A waiver is defined to be the intentional relinquishment of a known right, and it implies an election of the party to forego some advantage which he might have, at his option, insisted upon. There must be both knowledge of the existence of the right and an intention to relinquish it. And. Law Dic., 1097. There is no pretense here that the board of control had any knowledge of the physical condition of Frank Quinn, the insured, on the twenty-fourth of June, when the $9 dues were received at their office. The appellant should have had verdict and judgment. *Lewis* v. *Insurance Co.*, 44 Conn., 72; *Grand Lodge* v. *Jesse*, 50 Ill. App., 109; 2 Bac. Ben. Soc., sec. 431; *Insurance Co.* v. *Pruett*, 74 Ala., 498; *Hall* v. *Thompson*, 1 Smed. & M., 443; 3 Am. & Eng. Enc. L., 1091.

*Reversed and remanded.*