WOODMEN OF UNION *v.* WARNER.

(Division A.  May 26, 1930.)

[128 So. 558.  No. 28734.]

R. L. Jayne, of Greenville, and J. D. Shackelford, of Hot Springs, Ark., for appellant.

**Wynn & Hafter,** of Greenville, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellee, Mary Warner, instituted this suit in the county court of Washington county against the appellant, Woodmen of Union, a mutual benefit society, on a policy of insurance issued by the appellant on the life of Armstead Warner, husband of the appellee, in which the appellee was named as beneficiary. In answer to the suit, the appellant filed a plea admitting the issuance of the policy, but denying liability thereunder on the ground that, for several months prior to his death, the insured had been in default in the payment of the monthly premiums and assessments due under the terms of the policy, and thereby he had forfeited his membership in said society and caused his policy of insurance to lapse or to become void and of no effect, and that the policy had not been reinstated in accordance with the constitution and by-laws of the society in force before and at the time of such delinquency, and at the time of the death of the insured. Upon the proof offered at the trial of the cause, the court refused to grant a peremptory instruction requested by the appellant, and peremptorily instructed the jury to return a verdict for the appellee, and, from the verdict and judgment entered in pursuance of this instruction, an appeal was prosecuted to the circuit court. In the circuit court, the judgment of the county court

was affirmed, and thereupon an appeal to this court was perfected; and on this appeal the only assignments of error argued are based upon the action of the court below in refusing to grant the peremptory instruction requested by the appellant and in granting the one requested by the appellee.

The constitution and by-laws of the society, a copy of which was filed as an exhibit to the pleadings, and was introduced in evidence, contained the following provisions: "Should the deceased member be non-financial at the time of his or her death, in either of the departments, then the Supreme Lodge Woodmen of Union shall not be liable to the beneficiaries in any sum whatever. The policy, the articles of incorporation, the Constitution and laws of the Order and application for membership and medical examination, signed by the applicant, and all amendments now or hereafter adopted, especially in regard to contributions and benefits, shall constitute the agreement between the Order and the member. . . . The brothers and sisters in the local Lodges and Camps shall be known as financial, non-financial, suspended and expelled. Any brother or sister whose assessment is not paid into the Supreme Custodian's office on or before the fifteenth day of the month shall be declared non-financial. . . . No non-financial, suspended or expelled brother or sister shall be allowed to receive the password, visit local lodges or camps, or the Supreme Lodge Camp, or receive aid from his or her subordinate Lodge or Camp or from any others. They shall also be denied the right of benefit of death or other policies. . . . Any suspended or non-financial member may reinstate himself or herself in his or her local Lodge or Camp and the Supreme Lodge Camp, at any time by paying all back dues and assessments, taxations, etc., in full and furnishing a certificate of good health signed by a competent physician. In such case he or she shall be declared a brother or sister in good standing, but the Supreme Lodge Camp, or any subordinate Lodge or Camp, shall

have the power to reject any brother or sister as they would a new applicant."

The constitution and by-laws of the society also contain the following provision in reference to reinstating delinquent members: "When delinquent members are in arrears one month they shall not be eligible for any benefits from any department of the Order, but if they desire to reinstate their certificates, such delinquent members shall send all endowment assessments that are due, together with a doctor's certificate, certifying soundness of mind and body, on or before the tenth day of the succeeding month. If such delinquent members allow their endowment assessments to remain unpaid after the tenth day of the third month subsequent to their suspension, such delinquent members shall only be reinstated as new members and shall send in a doctor's certificate, the endowment assessment for the month in which they are reinstated and fifty cents (50c) for a new policy or certificate. No local Lodge or Camp, or officer thereof, shall have the power or authority to waive the provisions of this law."

The evidence shows that the insured forfeited his policy or insurance certificate by defaulting in the payment of his monthly dues and assessments for the months of May, June, July, and August, 1927; that on August 19, 1927, he remitted to the home office of the society at Hot Springs, Arkansas, the sum of six dollars, the amount of monthly dues then in arrears, and with this remittance he forwarded a certificate of a doctor reading as follows: "This is to certify that Armistead Warner was sick and under my care during March and April, 1927. Dr. Lewis."

The testimony is positive and uncontradicted that, at the time this remittance and certificate were forwarded, the applicant for reinstatement was in good health, but he died on August 28, 1927, without having been attended by a physician during the months of June, July, or August, 1927. This remittance of six dollars was received

at the home office of the society on August 20, 1927, and was in the due and regular course of business entered on the books of the society. On the day after the death of the said Armistead Warner, the financial secretary of the local lodge of which the deceased was a member, gave the home office of the society telegraphic notice of the death of the said Warner, and thereupon the appellant society issued its check for six dollars and forwarded it to the financial secretary of the local lodge, with directions to deliver it to the widow of the deceased, but she refused to accept it.

The appellant contends that, under the facts above stated, there was no waiver of the rules and regulations of the society which required delinquent members to furnish with their applications for reinstatement a doctor's certificate of good health, and for a reversal of the judgment of the court below, it relies upon the case of Knights of Pythias v. Quinn, 78 Miss. 525, 29 So. 826, in which it was held that ''there can be no waiver by the officers of a mutual benefit society of a forfeiture of membership incurred under its laws, without knowledge of the facts touching the subject of the waiver.'' In the statement of facts in the Quinn Case, supra, it is stated that the insured remitted the dues in arrears ''while [he was] confined to his bed [with a serious illness], and after it became quite apparent that he would not recover,'' and at a time when he ''was proximately in a dying condition,'' while in the opinion of the court it is said that ''when he sent forward his dues for reinstatement, he was seriously sick—in fact, on his deathbed,'' and ''in the letter accompanying the remittance of his dues there is not a syllable relating to his health.'' In that case there was some evidence that prior to his death, on July 2, 1899, the insured received a letter from the officers of the appellant society, which had been lost, but which waived the forfeiture and unconditionally reinstated him as a member. However, on July 29, 1899, the board of control of the order or society answered

the insured's letter and inclosed a receipt for his remittance, informing him that his forfeiture had been canceled, and that he had been placed in good standing, provided he was then in good health.

Upon these facts, the cause was presented by counsel and decided by the court on the theory that the board of control of the insurance order could not be held to have waived its right to reject the application for reinstatement on account of the bad health of the applicant when it had no knowledge or information that the applicant was, in fact, in bad health.

In the case at bar, it is conceded that the proof showed, without conflict, that, at the time he applied for reinstatemen and remitted the dues in arrears, Armistead Warner was, in fact, in good health. Upon this proof, the fact of ill health did not exist to be waived. In order to complete his reinstatement, the only thing to be waived was the physician's certificate showing that the applicant in fact was in good health at the time he applied for reinstatement. The officers of the Supreme Lodge had full knowledge of the fact that this physician's certificate had not been furnished in accordance with the regulations of the constitution and by-laws of the society. The by-laws of the society provided that no officer of a local lodge or camp should have the power or authority to waive any of the provisions of the laws of the society in reference to reinstatement of members. But there is no such prohibition applicable to the officers of the Supreme Lodge; and we are of the opinion that.by accepting payment of the dues in arrears and crediting the same on the books of the society as a payment in full of all arrears, without notifying the applicant that anything further would be required to complete his reinstatement, and by retaining this payment until after notice of the death of the applicant, the requirements of the by-laws in reference to a physician's certificate were waived.

The judgment of the court below will therefore be affirmed.