As was said by this court in the case of State v. Thompson, 106 La. 366, 30 South. 897 (and quoted with approval in State v. Blackman, 108 La. 124, 32 South. 334, 92 Am. St. Rep. 377):

"There is ample authority in support of the doctrine that it is reversible error for the trial judge to fail, of his own motion, to give such instructions as will efface from the minds of the jurors the impression made by statements of counsel which are unauthorized and prejudicial, and there are many cases in which it has been held that the wrong done is not remedied even by such instructions."

The remaining bills, 3, 5, 6, and 7, are without merit.

116 La.—3

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that this case be remanded to the district court, to be there proceeded with according to law.

---

(40 South. 533.)

No. 15,859.

KENNEDY v. METROPOLITAN LIFE INS. CO.

(Jan. 15, 1906.    Rehearing Denied Feb. 26, 1906.)

1. INSURANCE—PAYMENT OF PREMIUM.

Where, by its terms, a policy of life insurance is not to take effect unless the first premium is paid, such premium cannot be said to be past due because not paid upon the day upon which the policy bears date.

2. SAME—OVERDUE PAYMENT.

When the agent of a life insurance company is authorized, in his discretion, to receive payment of premiums within 30 days after they fall due, provided the insured is alive and in sound health when such payments are tendered, the fact that (those conditions existing) he receives payment of a single past-due premium, for which he gives the usual receipt of the company, containing the stipulation, "The acceptance by the company, at any time, of a premium past due, is to be taken as an act of grace by the company, and not as a precedent, nor as a waiver of any of the policy conditions," cannot be considered as constituting a course of conduct whereby the insured was induced to believe that he might delay the payment of subsequent premiums. The company's acceptance of a past-due premium, upon such conditions, and when the insured was alive and in good health, does not authorize the assumption that it will accept a future premium when overdue, and when the insured is in bad health or dead.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by M. E. Kennedy against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed.

Howe, Spencer & Cocke, for appellant. Nicholas Eugène Humphrey and St. Clair Adams, for appellee.

Statement.

MONROE, J. Plaintiff, as the beneficiary, sues to recover the proceeds of a policy of insurance issued by the defendant upon the life of her husband. The defense is that the policy became void by reason of the nonpayment of the premium. There was judgment in the court a qua for plaintiff, and the defendant has appealed. The facts, as we find them from the evidence in the record, are as follows:

The policy sued on (being an "ordinary endowment fifteen-year policy" for $3,000) bears date March 27, 1902, and reads, in part, as follows:

"Metropolitan Life Insurance Company, in consideration of the answers * * * and of the payment of the annual premium of $188.28 on or before the delivery of this policy, and of a like amount on or before the 27th day of March of each and every year, * * * doth hereby agree, * * * subject to the conditions set forth on the reverse side hereof, * * * to pay, * * * upon the surrender of this policy at the expiration of fifteen years, * * * to Thomas J. Kennedy * * * the sum of $3,000; [it being further stipulated that, in the event of Kennedy's death, before the maturity of the policy, the amount called for shall be paid to his wife]."

Among the conditions thus referred to are the following:

"First. No obligation is assumed by this company upon this policy unless the first premium has been paid and the policy duly delivered, nor, unless, upon the date of delivery, the insured is alive and in sound health.

* * * *

Third. If any premium, or installment of premium, be not paid when due, this policy shall be void, and all premiums paid shall be forfeited to the company, except as provided below. [The exception referred to may be omitted.]"

The first premium was paid April 25, 1902, though whether the policy was delivered then or had been previously delivered does not appear. The receipt which was given to the insured, being in the form always used by the company in such cases, contains the stipulation:

"The acceptance by the company, at any time, of a premium past due is to be taken as an act of grace by the company, and not a precedent nor a waiver of any of the policy conditions."

The agent of the company in New Orleans is authorized, in his discretion, to receive payment of premiums within 30 days after they fall due, provided the insured is alive and in good health, but not otherwise. In 1903 he received payment on April 10th of the premium which fell due (on the policy sued on) upon March 27th; the insured being then alive and presumably in sound health. The premium which fell due on March 27, 1904, was not paid, and some time during the morning of March 30th the insured died. Defendant's agent, not being aware of his death, addressed a letter to him, which was mailed, and probably written, after the event, and which reads as follows, to wit (omitting advertising caption):

"New Orleans, March 30th, 1904.
"Mr. T. J. Kennedy, Algiers—Dear Sir: I respectfully beg to remind you that your premium of $188.28 * * * was due on the 27th inst. I called at your place this morning, being anxious to see you in connection with the Everard matter, as well as this premium. We have collected a few dollars more from Mr. Everard, and, if convenient for you, between now and Saturday, I will like to see you. Yours respectfully,
"[Signed]    Geo. G. McHardy, Supt."

Explaining what is referred to as the Everard matter, it seems that prior to the issuance of the policy in question H. Everard had become indebted to T. J. Kennedy in a sum which (presumably with interest added) subsequently amounted to $213. Whether Everard was then connected with the defendant company does not appear, but he afterwards became defendant's assistant superintendent (in New Orleans), and it was through him that in 1902 the policy in question was issued, and it was part of his duty to collect the premiums. In 1903, when the premium for the year fell due, Mr. Kennedy insisted that something should be done about Everard's debt to him, and there was a meeting, in the company's office, between Everard,

Kennedy, and McHardy (the latter being Everard's official superior), at which it was agreed that Everard should pay, or leave, $5 a month in the hands of McHardy for the extinguishment of Kennedy's claim. Kennedy then (upon April 10, 1903) paid the premium which had fallen due on March 27th, and Everard continued to pay the monthly installments as he had agreed. In fact, it would seem that he paid more than he had agreed; for on January 21, 1904, McHardy paid to Kennedy $150 in cash, and took his receipt, reading as follows:

"Jany. 21, 1904.

"Received of Mr. Geo. H. McHardy the sum of one hundred and fifty dollars ($150), being amount paid to him by Henry Everard for my account to date.

"[Signed]      Thomas J. Kennedy."

Subsequently, and up to the date of Kennedy's death (March 30, 1904), McHardy received from Everard payments, aggregating $30, which amount he holds for account of Kennedy's succession. Plaintiff's counsel during the trial appeared to be under the impression that McHardy, as the agent of the defendant, had agreed in April, 1903, that subsequent payments for account of Kennedy should go towards the payment of the latter's premium, falling due in March, 1904, but there is nothing to justify such an impression, and, if there were, the fact that Kennedy himself in January, 1904, withdrew all the money which up to that time had been paid to McHardy would show that the agreement had been abandoned. It is conceded that if Kennedy had been alive and in good health on March 30, 1904, and had then, or at any time within 30 days from March 27, 1904, tendered the premium which fell due on that day, it would have been received. As matters stood, however, when plaintiff's representatives called to make the tender, about April 2d, they were given to understand that the premium would not be received.

## Opinion.

As the letter written by defendant's agent to the insured upon March 30, 1904, did not leave the post office until after the death of the insured, it is evident that he could not have been misled by it, and hence that no estoppel, by conduct, arises from the writing of the letter. The inference most favorable to the plaintiff to be drawn from the writing of the letter is that it indicated that the writer, as the agent of the company, was then willing to receive the premium, which had fallen due a few days before, and that he would be willing to receive it until the following Saturday (meaning April 7th), but before we can adopt that inference we must consider that according to his contract the insured was required to pay the premium on the 27th of March; that by the terms of the receipts which had been given him for premiums previously paid he had been informed that the acceptance of a premium past due was an act of grace on the part of the company, and was not to be regarded as a precedent or waiver; that the same evidence by which it is proved that the agent accepted premiums after they were due also proves that his authority in the premises was limited to cases where the delay did not exceed 30 days, and where, at the time of the tender of the premium, the deceased was alive and in sound health; and that, unless those conditions existed, he received no delayed premiums. And we must further consider that whilst the writing of the letter and the language used are consistent with the idea that the premium would be received from the insured, if alive and in sound health, they are both inconsistent with the idea that the writer was referring to a risk which had already terminated by the death of the insured, to whom the letter was addressed. These considerations taken into account, our conclusion is that the letter merely verifies that which is admitted, to wit, that the pre-

mium would have been received, though past due, if the insured had been alive and in sound health.

As the contract was not to take effect unless the first premium should have been paid, the payment of that premium was, in a measure, optional with the insured, and it cannot be said to have been past due upon the day upon which the contract bears date. The question, then, is, does the fact that the company, through its agent, accepted the second premium after it became due, estop or preclude it from insisting upon the forfeiture resulting, according to the terms of the contract, from the nonpayment of the third premium? We think not. The single waiver, restricted, as it was, by its own terms, in the absence of any testimony going to show that the insured was otherwise induced to believe that it was intended as a precedent, and that he acted under that belief, cannot be considered as constituting a course of conduct by which he was influenced.

As was said in the case of Sydnor v. Metropolitan Life Ins. Co., 26 Pa. Super. Ct. 521 (quoted in the brief of defendant's counsel):

"There is nothing in the case stated from which it could be inferred that the insured was not at that time [when the payment relied on was made] in good health, and the acceptance of a premium, under such circumstances, could not have warranted the assured, nor the plaintiff, in assuming that the company would accept future premiums, when overdue, and at a time when the insured was actually dying, or already dead."

We have been referred to many other authorities by the diligent counsel on both sides, but are of the opinion that no useful purpose would be subserved by reviewing them. Cases of this kind are determined mainly upon their facts, and we do not think that upon the facts here disclosed the plaintiff is entitled to recover.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment rejecting plaintiff's demand and dismissing the suit, at her cost, in both courts.