# United Order of the Golden Cross v. Hooser.

## Action on Insurance Policy.

### (Decided April 15, 1909.  49 South. 354.)

1. *Pleading; Construction; Replication.*—Where the second plea was the general issue and the special pleas were numbered 3 to 7 inclusive, a replication filed to defendant's second plea cannot be construed as answering any of the other pleas, although it was wholly inapplicable to the second plea.

2. *Insurance; Mutual Benefit; Action; Pleading.*—Where the action was upon a mutual benefit policy and the plea was the general issue, a replication thereto setting up that the defendant waived a forfeiture, was inapt and subject to demurrer.

3. *Same; Forfeiture; Waiver; Pleading.*—A replication in answer to a plea of forfeiture of mutual benefit membership, that the company waived the disconnection of the insured from the order by accepting monthly installments after the alleges forfeiture, is not a sufficient allegation of the acceptance of the payments by the company, when construed as it should be against the pleader.

4. *Same; Forfeiture; Power of Officer.*—An allegation in a replication as an answer to a plea of forfeiture of membership in a mutual benefit association, that "they" waived insured's disconnection from the order by accepting payments, is not a sufficient allegation that the waiver was made by the company or its authorized agents and was too indefinite as to who accepted the payment.

5. *Same; Forfeiture.*—Where the pleas of forfeiture alleged that when the company received the payment which plaintiff claimed operated as a waiver of the forfeiture that plaintiff was physically unfit for membership in the order, which was known to plaintiff and unknown to the company, a replication thereto alleging that the company waived the forfeiture by accepting the payment, but which does not deny the allegation of the circumstances under which the payment was accepted, is insufficient.

6. *Same; Contract and By-Laws.*—Although not referred to in the policy, members of a mutual benefit association are presumed to know the provisions of its charter and by-laws and to contract with reference thereto.

7. *Same; Forfeiture; Waiver.*—Where the certificate provided that the suspension of a member worked an immediate forfeiture of his claim for benefit, and the by-laws provided that the failure to pay monthly assessments by a certain time would ipso facto suspend from the order, a failure to pay at the required time automatically suspended a member from the association without any ruling or other action adjudging a forfeiture.

[United Order of the Golden Cross v. Hooser.]

8. *Same; Pleading; Authority of Officer.*—An allegation in a replication that the mutual benefit association waived a forfeiture by accepting dues implies that the officer who accepted the payment had authority to do so.

9. *Same; Authority of Subordinate Lodges.*—Subordinate lodges or their ministerial officers, who are agents of the Supreme Lodge, if acting within the scope of their authority may waive forfeitures of membership in such mutual benefit association, regardless of the manner provided by the by-laws for restoring members to good standing.

10. *Same; Payment of Assessment; Agent.*—The knowledge of the insured being that of his agent, the fact that his agent did not know that the insured was ill at the time the past due assessment was paid so as to reinstate insured after forfeiture, would be of no effect since the transaction would be subject to the same infirmities as if the agent actually knew of his principal's illness at the time of the payment.

11. *Same; Waiver; Burden of Proof.*—Where the forfeiture of membership in the mutual benefit association is clearly shown, the burden to show a waiver of the forfeiture is upon the person seeking to recover upon the certifiacte.

12. *Same; Acceptance of Payment.*—In order for the acceptance of payments after forfeiture to constitute a waiver, the payments must be fairly and honestly made without concealments of material facts known to the insured and of which the company is presumed to have no knowledge; so that where the company was not informed that insured was very ill when the payments of past due assessment were made the acceptance of such payments does not operate as a waiver of forfeiture.

13. *Same; Evidence.*—It was proper to show what day the local treasurer of the benefit association received past due assessments, where it appears that the association claimed that it accepted payments without knowledge that the insured was ill and that upon learning this fact they tendered the insured the money so paid and the evidence was not definite as to when the payments were made.

14. *Same; Jury Question.*—Whether or not insured was a member in good standing at the date of his death was a question for the jury in an action on a mutual benefit certificate and a defense that the insured had forfeited his membership as of a certain date.

15. *Witnesses; Examination; Cross; Discretion of Trial Court.*— Where the agent of insured testified that the receipts for overdue premiums were given him by an officer of the society on a certain day, which was before insured died but that he did not remember on what date the officer tendered the money back to him, it was within the trial court's discretion and not reviewable to permit the question on cross examination as to whether the agent's recollection was as good as to the tender as it ·was to the date of the receipt.

16. *Same; Questions Already Answered.*—Where a question has been already answered the court may exclude the asking of another similar question.

17. *Appeal and Error; Exceptions in Lower Court; Effect.*—Where no exceptions are reserved to a question, it is not error to overrule a motion to exclude a responsive answer thereto.

18. *Evidence; Opinion.*—Where, under the evidence, it was a question for the jury as to whether or not insured was a member in good standing of the benefit association at the time of his death, a question to the officer of an association as to whether or not he was in good standing at the time of his death called for a conclusion and was properly excluded.

19. *Same; Extent of Authority.*—An officer can testify by a shorthand rendering of the facts that he had no authority to accept payment of past dues from a member of the benefit association, although the question as to whether he had such authority was for the jury, and the subject of opinion evidence; the other side being entitled to show on cross examinaiton, the grounds on which his statement was based.

20. *Same; Best Evidence; Absence of Writing; Negative Testimony.*—In order to show that a member of a benefit association had not been reinstated, an officer of the association could be asked whether the insured was reinstated as there was no record of that fact, and it could be shown aliunde.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Mrs. Allie Hooser against the United Order of the Golden Cross, on a mutual benefit certificate issued to her former husband, James M. Hooser. Judgment for plaintiff and defendant appeals. Reversed and remanded.

STALLINGS & DRENNEN, for appellant. The court erred in overruling demurrers to the count as amended.--Form 12, Code 1896; 105 Ala. 498. The court erred in overruling demurrer to the replication to the 2nd plea.— *Equitable L. I. Co. v. Osborn,* 90 Ala. 201; *Wright v. Forgy,* 126 Ala. 389; 95 U. S. 326; 54 C. C. A. 292. The court erred in overruling demurrers to replication 3.— 4 Mayf. 487. The demurrer to plaintiff's sur-rejoinder should have been sustained.—*Boyd v. Southern Mutual Aid Assn.,* 145 Ala. 168. The court should have given the affirmative charge for the defendant.—*Griffin v. Bass L. Co.,* 135 Ala. 490; 4 Mayf. 1058; 33 Wash. Law Rep. 722. On the question of waiver counsel cite the authorities next above referred to. Counsel discuss as-

signments of error as to the evidence, but without citation of authority.

GIBSON & DAVIS, for appellee.—The court did not err as to the pleadings.—*Mobile L. I. Co. v. Pruett,* 74 Ala. 498; *Travellers I. Co. v. Brown,* 138 Ala. 526. The court properly refused the affirmative charge to the plaintiff. —*Carter v. Fulgham,* 134 Ala. 242. The certificate was properly admitted in evidence.—Sec. 3296, Code 1896. The court did not err in refusing to permit the officer of the association to testify whether or not the member was in good standing at the date of his death.—*Mobile L. I. v. Pruett, supra.* Counsel discuss other assignments of error as to evidence but without further citation of authority.

DENSON, J.—Appellant is a fraternal and mutual benefit association, and as such on the 24th day of February, 1895, issued to James M. Hooser (who was the husband of the appellee) a benefit certificate, by the terms of which it undertook to pay appellee, as beneficiary, $2,000 at the death of the insured upon certain recited conditions. The insured died on the 6th day of August, 1906. Appellant refused to pay the claim, and appellee brought this action on the certificate to enforce payment. The trial of the cause in the court below resulted in verdict and judgment in favor of the plaintiff in the sum of $2,000, and the defendant appealed.

The complaint as amended is substantially, if not precisely, in Code form (Code 1896, p. 945, § 3352, form 12), as upon a policy of life insurance, and is not subject to any ground of the demurrer interposed thereto. —*Commercial Fire Ins. Co. v. Capital City Ins. Co.,* 81 Ala. 320, 8 South. 222, 60 Am. Rep. 162. The case of *Commercial, etc., Co. v. Morris & Co.,* 105 Ala. 498, 18

South. 34, cited by appellant in support of the demurrer, was an action, not upon a policy, but for the breach of an agreement to issue a policy of insurance, and is not in point. The certificate stipulates to pay the beneficiary out of its benefit fund on the following terms: "In accordance with and under the provisions of the law governing said benefit fund and upon satisfactory evidence of the death of said member and upon the surrender of this certificate the sum of two thousand dollars; provided the said benefit fund reaches the sum of two thousand dollars at the assessment called in payment of this certificate and if its said assessment shall not reach the said sum of two thousand dollars there shall be paid on said certificate all or a proportionate part of the fund received from the then membership in one assessment; and further provided that said member is in good standing in this order at the time of his death; that this certificate shall not have been surrendered by said member and another certificate issued at his request in accordance with the laws of this order; and provided also that the suspension, disconnection or expulsion of said member shall work an immediate forfeiture of all claims of said member on the benefit fund of the order, also the forfeiture of the claims of the beneficiaries named in this certificate." One of the defendant's by-laws provided that "any member who fails to pay his monthly assessment before midnight on the last day of the month in which it becomes due and payable shall ipso facto stand disconnected from the order," etc.

The defendant for answer to the complaint interposed seven pleas. One and two are pleas of the general issue. Plea 3 avers that the policy provides that payment thereon is conditioned upon the insurant's being in good standing in the order at the time of his death, and avers that insurant was not in good standing at the time of

his death. Pleas 4 and 7 aver failure on the part of insurant to pay an assessment due in June, 1906, and that ipso facto he was disconnected from the society, and forfeited all claims under his certificate. Pleas 5 and 6 set up the by-laws of the defendant recited above. Plea 5 avers that the intestate failed to pay his monthly assessment in the month of June, 1906, and that ipso facto he was disconnected from the order, and forfeited all claims under the benefit certificate. Plea 6 is the same as plea 5, except that it avers the additional fact of failure, likewise, to pay the monthly assessment for July, 1906.

Demurrers to pleas 3, 4, 5, 6, and 7, were overruled, whereupon plaintiff filed three special replications. The first of these, as the record shows, is addressed to "defendant's second plea," and sets up a waiver of forfeiture, in that the defendant accepted on July 31, 1906, the dues of the insurant for the months of June and July, 1906, and avers that the insurant was in good standing. It is apparent that the replication is entirely inapt, as an answer to plea 2—the general issue—and we have considered whether or not we should treat it as being addressed to another of the pleas; but the demurrer of the defendant is addressed to it as a replication to the second plea, and the next replication (No. 2) begins as follows: "The plaintiff, replying to pleas 3, 4, 5, 6, and 7, says," etc. We know of no rule by which we may overcome these difficulties, and treat the replication as directed to any one of the other pleas. Argument is unnecessary to show that the replication is subject to one or more of the grounds of the demurrer addressed thereto. Special replication 2 went out on demurrer being sustained to it. Replication 3 is in this language: "(3) The plaintiff, further answering pleas 3, 4, 5, 6, and 7, says that they waived the disconnection

of the plaintiff's intestate from said order by accepting the monthly assessments for June and July, 1906, on July 31, 1906. The plaintiff's intestate was a member of said order in good standing." It is obvious, construing this replication most strongly against the plaintiff, that it fails to aver that the assessments were accepted, or that the waiver was made, by the defendant or any one authorized by it to bind it in the premises. The pronoun "they," as used in the replication, may refer to persons not authorized to accept the dues or to make the waiver; and it is so indefinite as to render the plea subject to the seventh ground of the demurrer. For this reason the court erred in overruling the demurrer.

The defendant, after its demurrer to replications 1 and 3 was overruled, denied the allegations of the replications, and filed two special rejoinders, numbered 1 and 2. Rejoinder 1 is in this language: "That by section 3 of law 12 of the order of defendant it is provided that, if more than thirty days have elapsed since the disconnection of a member, such member can only be reinstated by applying to the commandery of which he is a member, and pay in full all dues, assessments, and fines charged against him and unpaid, and furnish the commandery with a certificate from a medical examiner of the order approved by the supreme medical director as to his fitness and condition, and a ballot shall then be ordered by the noble commander, and, if a majority of the votes cast are favorable, he shall be declared a member, otherwise he shall be declared rejected; that, notwithstanding the lapse of more than 30 days from the disconnection of plaintiff's intestate prior to his death as aforesaid in said pleas, yet said intestate had wholly failed to furnish said certificate, and had not been declared a member as provided in said law 12, § 3." Rejoinder 2 is as follows: "Defendant further says

that at the time of the payment of said money plaintiff's intestate was disconnected and said money was received without notice of the unfitness and conditions of said intestate, and defendant avers that at said time said intestate was unfit and not in a physical condition to warrant his acceptance as a member, all of which was unknown to defendant and was known to plaintiff's intestate, and, had defendant known of said condition, said money would not have been received, and that immediately, upon finding out the condition of said intestate, defendant offered to return said money, and now stands willing to return the same, and has the same on deposit subject to the order of the beneficiary as personal representative of said intestate, and said intestate was never declared as provided by the laws of the defendant a member after his said disconnection, and no part of said money has been used for the benefit of the defendant." The plaintiff, without taking issue upon these rejoinders, surrejoined as follows: "Comes the plaintiff, and, for answer to the rejoinder filed by the defendant, files the same answer to said rejoinder as was filed to the pleas in said case; and further says that they waived the matter therein set up by accepting the dues or charges against the plaintiff's intestate as a member of said order in accepting his dues for June and July, 1906, on the 31st day of July, 1906, and on July 31, 1906, the plaintiff's intestate was a member in good standing and said order by accepting said dues for June and July, 1906, on July 31, 1906, waived the right to claim a forfeiture for said months of June and July, 1906." A demurrer to this surrejoinder was overruled by the court. Manifestly the surrejoinder is no answer to the second rejoinder. Assuming, for the present, that the disconnection of the insurant (caused by nonpayment of dues) might be waived by a subsequent accep-

tance of the unpaid dues, yet if, as the rejoinder alleges, the insured was physically unfit for membership in the order (a fact alleged as being unknown to defendant, but known to the insurant, at the time the dues in arrears were received), and if, as the rejoinder alleges, with knowledge of the insurant's physical condition the dues would not have been received, we fail to see how it could be righteously or legally adjudged that the waiver of the forfeiture was effected by receiving the dues under such circumstances.—*Mobile, etc., Co. v. Pruett,* 74 Ala. 487, 498; *Royal Highlanders v. Scovill,* 66 Neb. 213, 92 N. W. 206, 4 L. R. A. (N. S.) 421; *Supreme Lodge, etc., v. Quinn,* 78 Miss. 525, 29 South. 826; *Kennedy v. Metropolitan, etc., Co.,* 116 La. 66, 40 South. 533; 25 Cyc. 859. Therefore, merely saying or alleging in the answer to the rejoinder that the forfeiture was waived by the defendant's accepting the dues in arrears on July 31, 1906, without denying or avoiding the averments above referred to, is not sufficient; and the demurrer to the surrejoinder should have been sustained at least so far as it purported to be an answer to rejoinder No. 2.

It was decided in the case of *Supreme Commandery, etc., v. Ainsworth,* 71 Ala. 436, 46 Am. Rep. 33, that "the members of such companies (as theirs) are presumed to know the charter and by-laws, and to contract in preference to them, though they may not be recited or referred to in the contract."—*Fraternal Union, etc., v. Zeigler,* 145 Ala. 287, 39 South. 751. This being true, according to the certificate of membership here, when read in connection with the by-laws of the organization, failure to pay dues by midnight of the last day of the month for which such dues were payable (June 30, 1906) ipso facto disconnected the certificate holder from the organization, and thereby automatically worked a

forfeiture of his claim to the benefits under the certificate without formal ruling by any judicatory of the order adjudging such forfeiture. This conclusion is well fortified by respectable authority.—*Northwestern, etc., Association v. Schauss,* 148 Ill. 304, 35 N. E. 747; *Bosworth v. Western Mut. Aid Soc.,* 75 Iowa, 582, 39 N. W. 903; *Leffingwell v. Grand Lodge, etc.,* 86 Iowa, 279, 53 N. W. 243; *Carlson v. Supreme Council, etc.,* 115 Cal. 466, 47 Pac. 375, 35 L. R. A. 643; *McDonald v. Ross-Lewin,* 29 Hun. (N. Y.) 87; *Blanchard v. Atlantic, etc., Co.,* 33 N. H. 9; *American, etc., Soc. v. Helburn,* 85 Ky. 1, 2 S. W. 495, 7 Am. St. Rep. 571; *Borgraefe v. Supreme Lodge, etc.,* 22 Mo. App. 127; *Feiber v. Supreme Council, etc.,* 112 La. 960, 36 South. 818. It must be conceded, then, that the only question is one of waiver—indeed, that is the question presented by the pleadings—and the appellant insists that the local lodge could not waive the forfeiture by accepting the dues subsequent to their maturity. In other words, the contention is that the only mode by which the member's right to benefits under the certificate could have been revived after the lapse of 30 days from the 30th of June, 1906, is that pointed out in the by-laws set up in the rejoinder, to-wit, application by the party to the commandery of which he was a member, payment in full of all dues, assessments, and fines charged against him and unpaid, and furnishing certificate to the commandery from a medical examiner of the order of his fitness, conditions, etc.

This question is one upon which the decisions of the courts in this country are in conflict; and we are not aware of the fact if this court has ever taken position upon either side of the question, though appellant's counsel in their brief cite the case of *Boyd v. Southern Mutual Aid Association,* 145 Ala. 168, 41 South. 164, and seem to construe it as being conclusive of the ques-

tion at issue in their favor. But we do not regard that case as authority either for or against the question here involved, and hold that this court is at liberty to adopt that view of the proposition which strikes it as being the more reasonable, the most equitable, and to fall in line with the decisions which support that view. The reasons given for holding that subordinate lodges and officers cannot waive forfeitures except in the manner prescribed by the by-laws of the organization are stated by the Missouri court in *Borgraefe v. Supreme Lodge, etc.,* 22 Mo. App. 127, as follows: "The subordinate lodges are, no doubt, the agents of the supreme lodge in dealings with the members for many purposes; and in those cases where the subordinate lodges act through their ministerial officers, and where the latter act in conformity with the rules governing the lodges and the order, these officers may become pro hac vice the agents of the subordinate lodges. But it is not shown to us that these officers are anywhere endowed with the power to set aside the rules of the order, or that the subordinate lodges are endowed with such a faculty. On the other hand, it is perceived by the provision of the laws of the order above quoted * * * that no grand lodge has power even to altar or amend the laws governing the subordinate lodges. The doctrine of waiver, which is often appealed to, to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders. The laws and rules governing the different branches of such orders are in the nature of contracts among all the members, and, considering the widespread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important, as a principle of public policy, that in

[United Order of the Golden Cross v. Hooser.]

cases of this kind their rules and regulations should be substantially upheld by the judicial courts."

The following cases support the view expressed above: —*State ex rel. Young v. Temperance, etc., Ass'n.*, 42 Mo. App. 485; *Karcher v. Supreme Lodge, etc.*, 137 Mass. 368; *Hall v. Supreme Lodge, etc.*, (D. C.) 24 Fed. 450; *Rood v. Railway, etc.*, (C. C.) 31 Fed. 62; *Modern Woodmen, etc., v. Tevis*, 117 Fed. 369, 54 .C. C. A. 293; *Supreme Lodge, etc., v. Jones*, 35 Ind. App. 121, 69 N. E. 718; *Grand Lodge, etc., v. Jesse*, 50 Ill. App. 101; *United Moderns v. Pike*, (Tex. Civ. App.) 76 S. W. 774; *Sovereign Camp, etc., v. Rothschild*, 15 Tex. Civ. App. 463, 40 S. W. 553; *Brown v. Grand Council, etc.*, 81 Iowa, 400, 46 N. W. 1086; *Lavin v. Grand Lodge, etc.*, 104 Mo. App. 1, 78 S. W. 325; *Graves v. Modern Woodmen, etc.*, 85 Minn. 396, 89 N. W. 6; *Field v. National Council, etc.*, 64 Neb. 226, 89 N. W. 773; *Rice v. Grand Lodge, etc.*, 103 Iowa, 643, 72 N. W. 770; *Sweetser v. Odd Fellows, etc., Ass'n.*, 117 Ind. 97, 19 N. E. 722; *Crossman v. Mass., etc., Ass'n.*, 143 Mass. 435, 9 N. E. 753; *Royal Highlanders v. Scovill*, 66 Neb. 213, 92 N. W. 206, 4 L. R. A. (N. S.) 421.

On the other hand, it is held that, as in all other cases forfeiture of the insurance provided by mutual benefit associations is not favored by the courts, they, in construing the conditions of membership where a forfeiture is claimed, will preserve, if possible, the equitable rights of the holder of the certificate of membership, and that forfeiture of membership resulting from nonpayment of plan dues may be waived; further, that where a subordinate lodge of an organization, through its officers, collects from its membership assessments and dues payable to the organization, such subordinate lodge or its officers are to be considered the agents of the organization, and they may, by collecting and retaining dues in

arrears, effect waiver of a forfeiture and a revival of the liability of the organization, notwithstanding the prescribed mode of reinstatement has not been complied with.—*Supreme Lodge, etc. v. Kalinski*, 163 U. S. 289, 16 Sup. Ct. 1047, 41 L. Ed. 163; *Supreme Tribe etc. v. Hall*, 24 Ind. App. 316, 56 N. E. 780, 79 Am. St. Rep. 262, and the numerous authorities there cited; *Whiteside v. Supreme Conclave*, (C. C.) 82 Fed. 275; *Beil v. Supreme Lodge, etc.*, 80 App. Div. 609, 80 N. Y. Supp. 751; *Grand Lodge, etc. v. Lachmann*, 199 Ill. 140, 64 N. E. 1022; *Daniher v. Grand Lodge, etc.*, 10 Utah, 110, 37 Pac. 245; *McDonald v. Supreme Council, etc.*, 78 Cal. 49, 20 Pac. 41; *Modern Woodmen, etc. v. Jameson*, 48 Kan. 718, 30 Pac. 460; *Erdman v. Mutual Life*, 44 Wis. 376; *Shea v. Mass. Benefit Ass'n.*, 160 Mass. 289, 35 N. E. 855, 39 Am. St. Rep. 475. See notes to *Lake v. Minnesota, etc., Ass'n.*, 61 Minn. 96, 63 N. W. 261, 52 Am. St. Rep. 538, 574, 575; *Morgan v. Independent, etc.*, 90 Miss. 864, 44 South. 791; Richards on Insurance, p. 80. It is said in Richards on Insurance, p. 80: "The tendency among the courts seem to be to deny the distinction between mutual and stock companies altogether in respect to the power of the officers and agents to waive conditions and estop the company from insisting upon forfeitures." In respect to forfeitures and waivers in insurance cases, our own court has said (and in effect, repeatedly): "On breach of condition and forfeiture of insurance the defendant has the election to avoid the policy, or waive its right to claim the forfeiture. Conditions in a policy of insurance, limiting or avoiding liability, are strictly construed against the insurer, and liberally in favor of the assured. Though a waiver may be in the nature of an estoppel and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined

to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, * * * it will be regarded as having waived the right to claim the forfeiture."—*Queen Ins. Co. v. Young*, 86 Ala. 424, 5 South. 116, 11 Am. St. Rep. 51; *Galliher v. State Mut. etc., Co.*, 150 Ala. 543, 43 South. 833, 124 Am. St. Rep. 83, and cases there cited.

The business of insurance companies, whether conducted on the mutual or the stock is of necessity managed by its officers and agents, and it has been held that an officer of a mutual benefit association who is its executive head, keeping its records, holding its funds in trust, and paying out the same on approval, has power to bind the association by waiving a forfeiture provided in its by-laws.—*Moore v. Order of Railway Conductors*, 90 Iowa, 721, 57 N. W. 623. We note here that, under the pleadings, the authority of any particular officer to receive assessments or dues in arrears does not necessarily arise, as it is averred in the surrejoinder that "the order by accepting said dues for June and July, 1906, on July 31st, 1906, waived the right to claim a forfeiture for said months of June and July 1906." This, of course, implies that the officer or agent who acted for the defendant was clothed with authority, either actual or apparent, to bind the defendant. It is the opinion of the court that forfeitures may be waived by subordinate lodges or their ministerial officers who are the agents of the supreme commandery, acting within the scope of their authority, regardless of the methods provided by the by-laws for the restoration of members to good standing. In this

view, it follows that the surrejoinder is sufficient as an answer to the first rejoinder.

Coming to the evidence, it appears that J. T. Stallings was the financial keeper of the records of the local commandery, and that, as such, it was his duty to collect from the members of that commandery their dues and assessments, to give them receipts for the same, and to report to the supreme commandery. The testimony shows that Stallings constituted one Calame his agent to receive the money for dues and assessments, and to hand the receipts to the members of the order. This engagement of Calame was consequent upon the facts that Stallings was a court stenographer, and Calame had a permanent place of business that was open at all times of the day and of convenient access to the members of said order. The books were left at Calame's place and in his charge; and the receipts for the dues, made out or signed by Stallings, were placed in the books to be handed out to the members. The insured, Hooser, had failed to pay his dues for June, 1906, which under the by-laws were payable not later than June 30th. The undisputed evidence shows that the money for the June and July dues of the insured was paid by one Drake to Calame, and that Calame handed him the receipts (which had been duly signed by Stallings) for the same. Drake testified that the payment was made and the receipts were delivered on July 31, 1906, while Calame testified that the money was paid about 12 o'clock August 6, 1906. The evidence without conflict shows that insured's wife was in Nashville on a visit to her mother, and that insured followed her there on July 1, 1906, and that he was there taken ill about July 10th, such illness continuing until 10 minutes past 10 o'clock, August 6, 1906, when death ensued. Drake testified that Hoosier's employer furnished him the money and re-

quested him to pay Hoosier's dues to the order, that he knew nothing about Hoosier's physical condition, and nothing was said about it to Calame at the time the payment was made. On the other hand, Calame testified that, after Drake had paid him the money and he had delivered to Drake the receipts, Drake sat down in his office and in conversation told him he had just received a telegram to the effect that Hoosier was dead, and that he (Calame) in reply said: "Mr. Drake, I am in the insurance business, and I can't see how you can collect money for a dead man. You cannot reinstate that man." The money was delivered by Calame to Stallings either on the afternoon of the 6th or on the morning of the 7th of August, 1906. He at once made an effort to pay the money back to Drake, but he declined to receive it. He then deposited it in a local bank and notified Mrs. Hooser, who was in Nashville, that it was in the bank subject to the order of the personal representative of Mr. Hooser or whoever was entitled to it. It seems that no administration has been had on Hooser's estate. The money was not remitted to the supreme commandery, but is in bank subject to the order of the beneficiary. Even though Drake's testimony be true that the payment was made on the 31st of July, and that he had no information as to Hooser's illness, yet, as he was acting for Hooser, the law attributes to the transaction the same infirmities that would have characterized it had Drake testified he knew of Hooser's condition.—*Royal Highlanders v. Scovill*, 66 Neb. 213, 92 N. W. 206, 4 L. R. A. (N. S.) 421. The evidence in respect to knowledge on the part of Calame and Stallings, of Hooser's condition is to the effect that neither of them received any information on the subject until after the payment was made and the receipts were delivered. In this state of the case, leaving out of consideration Calame's testimony

[United Order of the Golden Cross v. Hooser.]

in respect to the date of the payment, and waiving consideration of his authority vel non in the premmises (*Waldman v. North British, etc., Co.*, 91 Ala. 170, 8 South. 666, 24 Am. St. Rep. 883), it is clear to our minds that on the undisputed evidence the plaintiff was not entitled to recover against the defendant, and that the affirmative charge requested by the defendant should for these reasons have been given.

The forfeiture was shown without conflict in the evidence, and it devolved upon the plaintiff to show a waiver. As was said in *Mobile Life, etc., Co. v. Pruett,* 74 Ala. 487, 498: "A receipt of a premium after a breach of the condition for its payment has occurred is doubtless a waiver of the forfeiture. The payment must however, be made to the insurer, or to an agent having authority to receive it. And it must be made fairly and honestly. There must be no misrepresentation or concealment of material facts known to the party making the payment of which the insurer cannot reasonably be presumed to have knowledge." The bad state of Hooser's health was a material fact. The insured knew the state of his health (he was on his deathbed, according to Drake's version), and it cannot be presumed that the agent of the defendant knew it. It was indeed a fact peculiarly within the knowledge of the insured and it was concealed from or was not revealed to the agent. Therefore, while it might be conceded that the acts of the agent in receiving the dues in arrears might under ordinary circumstances constitute a waiver of the forfeiture, yet, under the circumstances as shown above, such act could not effect the waiver.—Bliss on Life Ins. § 190; 25 Cyc. 859. See, also, *Royal Highlanders v. Scovill; Supreme Lodge, etc., v. Quinn* (Miss.); *Kennedy v. Metropolitan, etc., Co.,* (La.), *ubi supra.*

[United Order of the Golden Cross v. Hooser.]

Witness Drake testified the receipts were given to him on July 31st; and on cross-examination, in testifying in respect to Stallings tendering the money back to him, said he did not remember the day of the conversation. Defendant's counsel then asked this question: "Is your recollection as good on that as it is about the receipts?" The court, on objection by the plaintiff, declined to allow the question. This ruling is not reviewable as it was a matter within the discretion of the court on cross-examination to allow or not to allow the question.— *Central, etc., Co. v. Edmondson,* 135 Ala. 337, 342, 33 South. 480, *Gregory's Case,* 148 Ala. 566, 574, 42 South. 829. The court committed no error in not allowing witness Stallings to answer the question, "I will ask you whether or not Mr. Calame accounted to you for that money?" for the simple reason that the witness had already testified: "I got this money from Calame. I am not clear whether it was the evening of August 6th or morning of the 7th, it was one of the other, of the year 1906." But we are of the opinion that the question, "Now, I will ask you again, Mr. Stallings, on what day you got that money?" should have been allowed. The witness had been indefinite as to the day he received the money from Calame, and it was important, as shedding light upon the promptness with which witness acted in tendering back the money, to show definitely the day it came into possession. The nineteenth ground in the assignment of errors is based upon the ruling of the court sustaining a motion made by plaintiff to exclude testimony. No exception was reserved to the ruling. Consequently the ground of error, though insisted upon, cannot be considered. Whether or not Hooser was a member and a member in good standing of the commandery or of the order on August 6, 1906, was a question to be determined by the jury from the evidence; and

[United Order of the Golden Cross v. Hooser.]

to have allowed witness Stallings to testify that the insured was or was not such would have been to allow him to state a conclusion. The court committed no error therefore in sustaining objections to questions calling for such conclusions.

Whether or not Stallings had authority from the grand commandery or from his commandery to accept money from a member after he had been disconnected for failure to pay his dues for the month previous, it is true, was a question for the jury under proper instructions from the court; but it was nevertheless competent for Stallings to testify in a shorthand way that he had no such authority.—*Gilliland v. Dunn*, 136 Ala. 327, 34 South. 25. The plaintiff by cross-examination could have developed the grounds upon which the witness' evidence was based or whether his authority was in writing. Such testimony is not an invasion of the jury's province. The evident purpose of the question to Stallings, "I ask you to tell the jury whether or not J. M. Hooser was reinstated, as provided by section 3 of law 12 of the laws offered in evidence after June 30, 1906?" was to show that no such reinstatement had taken place; and, if it had not, there was no record of any such fact to be produced, and it might be proved by Stallings if he knew the fact.

For the errors pointed out, the judgment appealed from will be reversed and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.