179 So. 185

PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA et al. v. EDMONSON.

6 Div. 201.

Supreme Court of Alabama.

Jan. 20, 1938.

Rehearing Denied Feb. 24, 1938.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellants.

368

Bradley, Baldwin, All & White, of Birmingham, for appellee.

THOMAS, Justice.

The suit was upon a policy of insurance issued September 9, 1921.

The policy was of that type which is known as a "non-cancellable" insurance policy, and provided indemnity for loss of time by accident or sickness. The plaintiff, having become disabled from sickness in 1935, was paid by defendant for a short period of time, about six months, and the defendant then denied further liability because of alleged misrepresentations in the original application for the insurance. The suit sought to enforce the terms of the policy, and the judgment was for the principal payments due on the contract with accrued interest thereon. Defendant's motion for a new trial being overruled, the case was duly appealed to this court.

The sufficiency of count 1 was challenged by demurrer. The count, in substance, alleges that the policy provides that, if disability occurs while that instrument is in force, defendant will pay monthly indemnity during disability; that such eventuality has taken place; that plaintiff has paid all premiums due, and hence is entitled to the sum for which suit is brought. The demurrer was properly overruled. Travelers' Ins. Co. v. Whitman, 202 Ala. 388, 80 So. 470; National Life & Accident Ins. Co. v. Hannon, 212 Ala. 184, 101 So. 892.

Many special pleas were filed by defendant alleging misrepresentations relied upon, either increasing the risk or made with the intent to deceive, or misrepresentations having both effects. They may be catalogued as follows: (1) Misrepresentations concerning a fractured skull; (2) misrepresentations concerning alleged cancellation of a policy in another company previous to the issue of the policy sued on; (3) misrepresentations concerning a broken

leg sustained in plaintiff's boyhood; (4) misrepresentations as to the state of insured's health when the policy was issued; and (5) misrepresentations as to the presence of indigestion, appendicitis, and a duodenal ulcer.

The statement in the application for insurance, applicable to the last misrepresentation relied upon, is as follows:

" '5.E Have you ever had or been treated for: Gastric or Duodenal Ulcer, Indigestion, Appendicitis, Piles, Fistula?' to which the plaintiff answered: 'No.'

"To this answer the defendants averred:

"That the answer to the said question numbered 5E is false in this:

"That prior to and at the time when the application was made as aforesaid, plaintiff had a duodenal ulcer, and had had, or had been treated for indigestion and appendicitis.

"Defendants further aver:

"That said separate and several misrepresentations were made by the plaintiff with actual intent to deceive; that the same related to matters material to the risk and that the Pacific Mutual Life Insurance Company of California did issue and deliver said policy relying on the truth of said answers made by the plaintiff.

"Plea XVI. For this plea defendants adopt all of Plea XV down to and including the words 'plaintiff had a duodenal ulcer, and had had, or had been treated for indigestion and appendicitis' where the same last appears in said Plea, and in addition thereto add the following averments:

"And defendants further aver:

"That said separate and several misrepresentations made by the plaintiff materially affected the acceptance of the risk and the hazard assumed by The Pacific Mutual Life Insurance Company of California.

"Plea XVII. For this plea defendants adopt all of Plea XV down to and including the words 'plaintiff had a duodenal ulcer, and had had, or had been treated for indigestion and appendicitis' where the same last appears in said Plea, and in addition thereto add the following averments:

"And defendants further aver:

"That the facts misrepresented by the plaintiff increased the risk of loss."

The foregoing is sufficient to illustrate the case presented in the trial court, where demurrers to special pleas were overruled.

The plaintiff's replications 2 and 3 allege a waiver of the matters set up in the pleas in that the defendant, with knowledge of the facts, accepted premiums paid by plaintiff.

Hence the case went to the jury on count 1, pleas III to XLIX, inclusive, and replications 2 and 3.

The statutes and our decisions recently declared in effect are as follows: "It is provided by the statutes, sections 8364, 8507 of the Code, that neither misrepresentations nor warranties shall avoid a policy of insurance, unless they were made with (1) the actual intent to deceive, or (2) unless the matter misrepresented increased the risk of loss. As construed by this court, if (1) the actual intent to deceive and the matter misrepresented or breached in the warranty was material to the contract as to its assumption by the insurer, or (2) if the matter misrepresented or breached in the warranty increased the risk of loss, the policy is avoided thereby. Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524; Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; Commonwealth Life Ins. Co. v. Brandon, 232 Ala. 265, 167 So. 723; Sovereign Camp, W. O. W., v. Moore, 232 Ala. 463, 465, 168 So. 577, 579." Sovereign Camp, W. O. W., v. Thompson, 234 Ala. 216, 174 So. 761, 764.

And it is further declared by the decisions (Woodmen of the World v. Alford, 206 Ala. 18, 24, 89 So. 528, 533) as to the several classes of policies of insurance that: "As applied to policies of insurance, it is elementary law that all terms and provisions thereof shall be construed most strongly against the insurers; that the by-laws of a mutual benefit society shall be construed more favorably to the insured, in view of its object to give insurance, and not unreasonably to deprive one of the same (Union Cent. Relief Ass'n v. Johnson, 198 Ala. 488, 73 So. 816; Sovereign Camp, W. O. W., v. Adams, 204 Ala. 667, 86 So. 737), and that one having authority may waive conditions in a policy intended for the benefit of the insurer (Mutual Life Ins. Co. v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860; United Order of the Golden Cross v. Hooser, 160 Ala. 334, 341, 342, 347, 49 So. 354.)"

A statement of the facts is that on August 19, 1921, plaintiff made application to the Pacific Mutual Life Insurance Company (one of the appellants) for a policy

of insurance providing monthly payments of $1,000 for disability from accident or sickness; that on September 9, 1921, the policy was issued to him, signed by its secretary and president, and countersigned by "W. F. Fitts & Son, Authorized Agent or Manager." The policy recited: "In witness whereof, the company has, by its proper officers, signed this Contract in the City of Los Angeles and caused same to be countersigned by its authorized Agent or Manager, as of the Ninth day of September, 1921."

It is indorsed on the policy, as follows:

"Los Angeles, Calif., September 9, 1923.

"At the request of the Insured under policy No. 4622405, the Disability Monthly Indemnity provided by said policy is hereby reduced from One Thousand dollars per month to Five Hundred dollars per month and the annual premium is hereby changed from Two Hundred twenty-five dollars to One Hundred twelve and 50/100 dollars.

"The Pacific Mutual Life Insurance Company of California."

The company's signature to the above indorsement was authenticated or affixed by its "Assistant Secretary" and by its "Vice President."

We may observe that, by the testimony of Drs. Levine, Carter, and Lewis, the plaintiff was suffering with what is known as "angina pectoris," when he made his application for disability or monthly allowance. Plaintiff, as a witness, testified that until he was so last affected or afflicted in 1935 he was engaged in the practice of medicine (his profession) and regularly discharged his duties as such; that he had no active ulcer attacks "since before I went in the army" and that he has "had gastric disturbances."

The plaintiff, as a witness, further testified of the pertinent matters on which pleas and replications are based. He said: "I mean that last attack of duodenal ulcer was in 1919, I said back there, and I wouldn't say definitely when the last attack of duodenal ulcer manifested. To my best knowledge, I believe I did not have it for sometime before I went in the army, and my general health was excellent. When I came out of the army I don't recall having more than symptoms that would show the indication of faulty diet condition, constipation, or something of that kind or character; that I would never have a definite hunger pain. I feel convinced that the ulcer I had back yonder has been healed. I went to the Veterans Administration in 1936. It was in the Spring sometime. As to whether I have a history of having had intermittent duodenitis and ulcers since 1919, I don't recall. I must have told the people there that I had intermittent digestive disturbances, but I don't recall having said that I had duodenal ulcer definitely because I don't think that I was subject to it. You ask me whether I told them that since my discharge up until about seven years prior to the time when I was first examined that I had duodenitis and intermittent ulcers, I don't recall whether I did or not. I must have mentioned it in some way in giving the history of duodenitis. After I came back from Mayo's and French Lick I made a claim for disability for health, sick and accident insurance with the Continental Casualty Company. I don't know why this claim wasn't paid except the extenuating circumstances associated with it. That Continental policy was cancelled, yes, at my request. I am positive that the premiums due had been paid."

There was a tendency in the evidence that Edmonson was cured of such ulcer when he made his application to defendant in 1921 for the policy on which this suit is based, and that appellee had no signs of that trouble on which his present application and suit is based, his trouble with the ulcer having ceased to exist; that is to say, that the duodenal ulcer did not interrupt plaintiff's discharge of his duties as a physician, and that it was angina pectoris that permanently disabled him.

The effect of the expert testimony for appellants was that duodenum ulcer might cause arteriosclerosis and angina pectoris.

Thus conflicting tendencies of evidence were presented as causing appellee's disability. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

A physician may testify as an expert as to the effect of a former disease upon a person's illness, the cause thereof, and how it affects a person's ability to work. Equitable Life Assur. Soc., etc., v. Davis, 231 Ala. 261, 164 So. 86; Mobile Life Ins. Co. v. Walker, 58 Ala. 290. Expert testimony is not necessarily binding on the jury. Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524.

It is well recognized that the knowledge of an agent of an insurance company as to matters within the general scope of his authority is knowledge to the company. United States H. & A. Ins. Co. v. Goin, 197 Ala. 584, 73 So. 117; American Life Ins. Co. v. Buntyn, 227 Ala. 32, 148 So. 617.

Many diseases do not, as a matter of law, increase the risk of loss, but may be shown to do so as a matter of fact, the question being, in the last respect, for the jury. Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524; Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841; General Accident, Fire & Life Assur. Corporation v. Jordan, 230 Ala. 407, 161 So. 240.

We come to the issue of fact as to whether or not appellee-plaintiff proved his special replication of waiver of the matter alleged in the pleas, by the acceptance of premiums with knowledge of the fact sought to be urged in defense. The plaintiff, Edmonson, was examined at the Veterans' Administration Facility at Gulfport, Miss., on April 10, 1936, for his heart ailment. In that history and report appears a statement of the skull fracture which plaintiff suffered to the right of vortex, caused by falling off a horse at six years of age; the scar on his left lower leg from a compound fracture in 1892; and that since his discharge until about seven years ago he had been "bothered with duodenitis and concurrent intermittent ulcers," but that (as he states it) "I cured myself by dieting and habit regulation. After the first attack in Cincinnati, the next time I noticed this trouble was substernal fullness following setting-up exercises. On that account I gave up this exercise. In the Fall of 1932 I noticed this substernal fullness getting more prevalent, and then consulted Dr. H. R. Carter, a heart specialist of Birmingham. He found absolutely nothing even from X-Ray and electrocardiographic standpoint, to substantiate the symptoms. In the Spring of 1933, I returned to Dr. Carter, as the symptom became more severe. Re-examination revealed no findings after going through physical examination of this system reveals no abnormalities."

From this report of Edmonson's physical examinations, his subsequent answers and statement of the full history of his case, including his visit to Cook County Hospital for diagnosis and cure, his treatment at Dr. White's in Boston, and treatment by Drs. Lewis and Harrison, as well as at the Veterans' Hospital in Tuscaloosa, it seems certain that all relevant past illnesses and injuries were contained in the history given by Edmonson to the Veterans' Hospital in 1936. The report made to the Veterans' Hospital by Edmonson came into appellant's hands prior to the payment by appellee of the premium then accrued.

As the record will show, Mr. Tate, who was a claim director during 1936, was employed by the Retail Credit Company of Washington, D. C., and among other things investigated the claims made against insurance companies, including those made against the Pacific Mutual, the defendant to whom the original application was made and who issued the policy of insurance which is the subject of this suit. In answer to the question as to whether or not the Retail Credit Company had been employed to make any investigation with respect to a claim made against the Pacific Mutual by Dr. Edmonson, Tate said: "To the best of my recollection, yes."

To prevent confusion, we prefer to set out the following questions and answers of Mr. Tate, as indicated below:

"State whether or not the said Retail Credit Company made such an investigation and whether or not you were the agent or representative of said Retail Credit Company in performing all or any part of such service. * * *

"From copies of correspondence appearing in the Veterans Administration file, I see that I communicated with the Veterans Administration on June 13, 1936, with reference to obtaining certain record information concerning one John H. Edmonson. * * *

"If you state that you did represent said Retail Credit Company in that behalf, state whether or not you in any way sought to secure any information from United States Veterans' Administration at Washington, D. C., with respect to a physical examination made of the said John Heron Edmonson on April 10, 1936, at the Veterans' Hospital, Gulfport, Mississippi. * * *

"From the copy of the letter appearing in the Veterans Administration file, it is evident that I did request such information, although I have no definite recollection of the case beyond what appears in my letter of June 13, 1936."

The witness was further asked, after his admission that he had a conversation with some one connected with the Insurance Section, United States Veterans' Administration, Washington, D. C., "with respect to a report of any physical examination of the said John Heron Edmonson," "* * * state whether or not you had with you a letter or other paper or document signed by or purporting to be signed by John Heron Edmonson, addressed to said United States Veterans' Administration," and his answer was: "I undoubtedly did have such a paper as it is necessary to have an authorization signed by the veteran before information can be obtained from the Administration's files."

The witness stated that he turned the said authorization over to the contact official of the Veterans' Administration handling his contact, and that said letter stated that the Veterans' Administration was authorized to give him, as a representative of the Pacific Mutual Life Insurance Company of California, "full and complete history given by me" (Edmonson).

When the testimony of Tate is fully considered with reference to the Credit Company on the one hand, Edmonson on the other, and the Veterans' Bureau, and the letter of the Director of Insurance of the Veterans' Administration, in words and figures, as follows,

FDD
Edmonson, John H.
C—910 411

"Retail Credit Company
"Washington, D. C.

"Attention J. S. Tate
"Claim Section

"Gentlemen:
"Further reference is made to your communication dated June 13, 1936, requesting a copy of the Administration's examination reported dated April 10, 1936, in the case of the above named veteran.

"In accordance with the authorization granted by Dr. Edmonson, there are herewith furnished photostats of the examination dated April 10, 1936, conducted in the Veterans' Administration Facility, Gulfport, Mississippi.

"Respectfully,
"H. L. McCoy
"Encs. Director of Insurance.

"Photostatic copy of the Examination made by the Veterans Administration Facility, Gulfport, Mississippi, dated April 10, 1936, is in words and figures as follows,"

we are of opinion that information did come to defendant as to the report in question by Dr. Edmonson to the Veterans' Bureau and to which we have above referred.

No other rational conclusion can be reached as to notice to the authorized agent of defendant, when consideration is given to the correspondence, reports, and photostatic copies of reports pertaining to Edmonson's condition, past and present. For example, the correspondence dated 5–17–36 and addressed "To whom it may concern," that the Veterans' Administration was authorized to give full and complete information to a representative of the Pacific Mutual Life Insurance Company; that of June 13, 1936, by J. S. Tate, claim section, to Dr. Hyland, Chief of Contact, United States Veterans' Administration, stating that Mr. Tate was "representing the Pacific Mutual Life Insurance Company" and "wished to make proper application for a photostatic copy of the physical examination report of April 10, 1936, which is contained in nine pages of your file" in regard to the case of John H. Edmonson C—910,411; and that of June 10, 1936, from H. L. McCoy, Director of Insurance of the Veterans' Administration to the Retail Credit Company, which exhibited the photostatic copies of Edmonson's examination in question. That is to say, we cannot escape the conclusion that full information as to Edmonson's reports came to defendant's knowledge in 1936, before the last premium was paid by Edmonson and received by defendant's general agent, pursuant to notice of premium due or to become due.

■ Marguerite C. Moore testified that she duly sent the report and photostatic copies of Edmonson's case to the Retail Credit Company; that the letter was sent out in the "usual and customary way" of handling such outgoing mail; and the failure of return of the duly posted, directed, and properly stamped letter indicated its receipt by defendant's authorized agent. Franklin Life Ins. Co. v. Brantley, 231 Ala. 554, 556, 165 So. 834. The defendant does not rebut this evidence and representation.

To the same effect is the evidence of Lovell, who was investigating the case and who examined the Edmonson file with Dr. Lewis. The latter testified that he gave Lovell the file, that it contained Levine's letter with X-ray report, and that Lovell went through

the file, read it and discussed it, making notes thereon. Lewis also testified that Lovell's superior also called on Lewis and examined the Edmonson file in which were contained the Levine letter and the X-ray report, showing that the ulcer was healed; that is, the history given by Edmonson reviewing his previous trouble with ulcer. The Levine letter or report was in 1935; Lovell saw Levine's letter in June 1936, the Veterans' Administration's report was about June 30, 1936; and the premiums paid by Edmonson and accepted by the defendant's general agent on August 26, 1936.

 Edmonson was in the Veterans' Hospital in Chicago in August, 1936. The premium notice of his next premium came to his home in Birmingham in his absence and was sent to him. Upon receipt of the notice, Edmonson immediately sent it to his bank with request that the bank pay the premium out of his account, which was done. This was the way assured always paid the premiums—through the First National Bank of Birmingham, which was the agent for collection of premiums from policyholders in that business area. Thus the payment of the premium a short while in advance was not unusual or fraudulent. This was the natural course and necessary precaution in view of the fact that the policy contained no provision waiving premiums in case of sickness, disability, accident, or casualty.

It has been declared that, when a replication alleges that the insurance company, with a knowledge of the existence of a ground of forfeiture, accepts a premium and thereby waives a forfeiture, a rejoinder to such replication that the agent who accepted the premium did not know of the alleged forfeiture is subject to demurrer. This is for the reason that it merely traverses and does not confess and avoid the allegations of fact contained in such replication. United Order of the Golden Cross v. Hooser, 160 Ala. 334, 49 So. 354.

The general authority and agency of the Fitts Company is not only established by the required countersignature to the policy, but by its course of business in issuing notices of premiums to accrue, directing the agency through which the same may be paid, but by testimony tending to show the personal knowledge of such agency, which fact may be testified to by such person to be affected, Yorkshire Insurance Co. v. Bunch-Morrow Motor Co., 212 Ala. 588, 103 So. 670; Roberts & Sons v. Williams, 198 Ala. 290, 73 So. 502, and in such wise is the agency by "W. F. Fitts & Son, Authorized Agent or Manager," shown by the record.

The conclusions reached from a study of the record are (1) that there is no connection between the past ailments and injuries and the present cause of appellee's disability caused by the disease of the heart indicated; (2) that on the question of a waiver with knowledge the defendant had knowledge of every ailment or injury of defendant about two months prior to the receipt of the premium on August 26, 1936; (3) that it acquired this knowledge from Giles & Lovell, who examined Dr. Lewis's files wherein were full disclosures and information regarding the ulcer; that these two agents were performing the delegated duty to ascertain the facts about appellee's past injuries and illnesses; (5) that, having so obtained the available knowledge, it was imparted to the company in June, 1936; and (6) thereafter the company accepted premiums in August through its general agent, W. F. Fitts & Co., and who were authorized to accept such premiums when paid.

The motion for a new trial was refused without error under the rule that obtains. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738; Nashville, C. & St. L. Ry. v. Crosby, 194 Ala. 338, 349, 70 So. 7.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.